THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEFFREY F. KNIGHT, Defendant-Appellant.

First District (3rd Division)    No. 77-568

Opinion filed March 29, 1978.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

On November 6, 1975, the defendant, Jeffrey F. Knight, entered a plea of guilty to burglary and theft and was sentenced to five years probation. On December 16, 1976, the defendant was found in violation of his probation by committing a subsequent burglary and sentenced to two to six years in the penitentiary. The defendant has appealed contending: (1) the State failed to prove he was on probation at the time the alleged offense occurred on January 31, 1976; (2) he was improperly denied the opportunity to suppress a television set and certain incriminating statements made by him; and (3) he is entitled to credit on his sentence for the time spent on probation.

On December 3, 1976, the defendant filed two written motions to suppress. The motion to suppress statements alleged that after the defendant's arrest on February 4, 1976, the defendant was interrogated but was not informed of his rights as guaranteed by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. It further specifically alleged:

"4. That the statements sought to be suppressed were obtained as a result of psychological and mental coercion illegally directed against the defendant and that such statements were, therefore, involuntary.

5. That the statements sought to be suppressed were obtained as

the product of and as the direct and proximate result of confronting the accused with certain material misrepresentations of fact known by the interrogator to be misrepresentations."

The defendant asked the court to conduct a hearing to determine if the nature of the statements was voluntary and to suppress those statements.

The other motion, also filed that same day, was to suppress as evidence a television set seized in violation of the Illinois Constitution of 1970, article I, sections 6 and 10, and the fifth amendment to the United States Constitution. Specifically that motion charged:

"1. That while in police custody on 4 February, 1976 defendant made a confession illegally obtained and the evidence was seized as a direct result of the confession.

2. The policy obtained the evidence from the defendant's home by harrassing his wife and threatening to search his home without a warrant, and attempting to coerce consent to the search, and performing the search without consent."

When presenting the motions counsel for the defendant stated that notwithstanding that this was a violation of probation hearing he would ask the court to entertain the motions because part of the defendant's allegation was that incident to the seizure of the property police harassment was present. The court denied the motion and commented that at a hearing for violation of probation the defendant was not entitled to present motions to suppress. However, he stated that the defendant could introduce the testimony to determine the credibility of the witnesses.

The revocation hearing took place a week later on December 10, 1976. Chicago Police Officer Robert Specht testified that on January 31, 1976, he went off duty at 3 a.m. While traveling west on Fullerton Avenue en route home he observed the defendant and a second man, named Ramos, standing in front of a cleaning store on the north side of the street at 3240 West Fullerton. He proceeded to the corner, turned his car around and parked on the opposite side of the street and observed the defendant for 45 minutes. Twice he saw the defendant and his companion run to the back of a building when a police car passed. Specht left when the defendant and Ramos crossed the street and began walking and were very near his car. When he next returned to work on February 2, 1976, while looking through the case reports from the prior days he noticed a report of a burglary at the cleaners during the night of January 30 to the morning of January 31.

At approximately 8 p.m. on February 4, 1975, Specht observed both the defendant and Ramos at the police station. The record indicates that the defendant had been arrested by other officers for disorderly conduct and there was no suggestion that Specht was instrumental in that arrest.

Specht further testified he along with his partner Officer Hart, talked to Ramos and then he informed the defendant's wife who also was present, that Ramos had made an oral confession to the burglary and stated the television set taken in the burglary was at the defendant's apartment. She was informed that if necessary, a search warrant could be obtained, but she could go to the apartment and bring the television set out. Specht accompanied Mrs. Knight to the apartment, and she voluntarily gave the television set to him. Upon returning to the station, Specht advised the defendant of his constitutional rights, pursuant to *Miranda,* and the defendant denied committing the burglary. After the television set was shown to the defendant at the station, he admitted that he broke the glass in the front door of the cleaners with a lead pipe and that Ramos went in through the door and obtained the television set.

The television set, which was introduced in evidence at the revocation hearing, was also identified by the operator of the laundromat. It was the only item taken in a burglary sometime prior to 5:30 a.m. on January 31, 1976. Hart did not testify.

Naomi Knight, defendant's wife, testified that Specht told her at the station she would be arrested for burglary if she did not give up the television set to the police and that the defendant gave them permission to get the set. According to the defendant's wife Hart pushed her out the station door and held her arms. He said they were going to take her to the apartment and she was just going to give them the television set. Hart informed her the police did not want to go through the bother when she said she would prefer that they obtain a search warrant. When she asked to speak to her husband before getting the television, Specht said it would be about three hours before she could talk to her husband again and they did not want to wait that long. Upon arriving at defendant's apartment she hesitated, but Hart pushed her inside and urged her to get the television. As Hart came about three feet inside the living room, she asked him to take the television and leave. She also testified Ramos had brought the television over a few days earlier and told her it was not stolen.

The defendant testified he had been at the laundromat for about five minutes on the morning of the burglary. He observed Specht, whom he had seen on four or five prior occasions when Specht would call him over as the defendant was walking his dog. The next day Ramos came to his apartment and asked to put a television set there. When defendant asked Ramos if it was stolen, Ramos said it was not. A few days later when the defendant was arrested, Specht told him that he, his wife and Ramos were going to be charged with burglary. The defendant denied committing the burglary and denied that he gave a statement implicating himself.

The defendant first contends the State did not prove he was on

probation at the time he committed the alleged burglary on January 31, 1976. However, the report of proceedings at defendant's plea of guilty on November 5, 1975, which is part of the record on appeal in this case, clearly shows the defendant was placed on five years probation on that date. The State proved that this offense of burglary took place on January 31, 1976, less than three months thereafter. The trial court's remarks during final sentencing of the defendant also show that the court remembered placing the defendant on probation and indicating to him at that time that he would be sentenced to the penitentiary for three to nine years if he violated his probation. In this case the trial court properly took judicial notice of matters of record in its own proceedings and this contention is without merit. *People v. Davis* (1976), 65 Ill. 2d 157, 161, 357 N.E.2d 792.

The defendant next argues that his conviction should be reversed because the trial court refused to allow him to present motions to suppress the television set and his statement given to police after he was shown the set.

The Illinois Supreme Court in *People v. Dowery* (1975), 62 Ill. 2d 200, 340 N.E.2d 529, had occasion to consider the exclusionary rule within the context of an illegal search and seizure. In analyzing the defendant's request that the exclusionary rule be applied to revocation proceedings, the court commented that while a defendant is entitled to due process of law at a probation revocation proceeding there is a significant dissimilarity between those proceedings and a criminal trial. The court observed that the overwhelming number of reported cases have held that the fourth amendment's exclusionary rule is not applicable under the circumstances to probation revocation proceedings and rejected the defendant's position. In doing so the court noted the reservation expressed by a number of courts in denying the applicability of the exclusionary rule to a revocation proceeding where police harassment is demonstrated. *Dowery*, at 206.

■■ The defendant in the instant case made a motion to suppress the television set before the hearing began and renewed the motion at the time of the hearing contending that there had been police harassment. That motion was denied before the hearings began because it was the court's belief that at a hearing on a violation of probation the defendant was not entitled to present motions to suppress. That motion presented two basic contentions. The first, that the television set was obtained as a result of a confession illegally obtained, does not appear to be borne out by the evidence elicited during the hearing. The defendant denied the making of a statement and Specht said the statement was made after the search. The second ground on which the motion was based, that the evidence was illegally seized because of the harassment of the

defendant's wife, threats to search his home without a warrant, the attempt to coerce consent, and the actual search without consent, were substantiated by testimony of Naomi Knight. We believe this is the type of harassment contemplated by *Dowery*. The defendant was entitled to have an evidentiary hearing on these charges and an assessment by the trial court as to whether these charges are in fact true. No hearing was had and the cause must be remanded to the trial court for a hearing on this issue.

A somewhat different problem exists with regard to the suppression of the statements based on the alleged violations of fifth amendment self-incrimination rights at a probation revocation proceeding. This issue has been addressed in a number of recent probation revocation cases. In the case of *In re McMillan* (1977), 51 Ill. App. 3d 940, 945, 367 N.E.2d 494, the court held that the statement taken in violation of *Miranda* must be excluded from admission into evidence in a probation violation hearing. In *People v. Bell* (1977), 50 Ill. App. 3d 82, 90, 365 N.E.2d 203, a finding of violation of probation was reversed where a confession was admitted, but the evidence showed that the State failed to call all material witnesses to the taking of a confession. (See *People v. Armstrong* (1972), 51 Ill. 2d 471, 282 N.E.2d 712.) The court stated that the rule that requires that all material witnesses be called before a confession is admitted into evidence was applicable to a probation revocation proceeding. *People v. Peterson* (1977), 50 Ill. App. 3d 853, 856, 365 N.E.2d 1172, *appeal allowed* (1977), 66 Ill. 2d 641, held that the exclusionary rule does not apply at probation revocation hearings where there have been only technical violations of the accused's fifth amendment rights and where the evidence so obtained is otherwise trustworthy. The court there found that the evidence admitted on the probation violation hearing was not coerced either psychologically or physically and allowed the admission of the confession. The *Peterson* court also distinguished *Bell* on the facts, stating that the defendant in *Bell* was substantially deprived of his right of confrontation when the State failed to comply with the material witness rule and therefore that failure made the confession patently untrustworthy. In *People v. Woodall* (1976), 44 Ill. App. 3d 1003, 1008, 358 N.E.2d 1267, *appeal denied* (1977), 65 Ill. 2d 584, an allegation was made that the defendant was denied due process by the court's refusal to suppress evidence illegally seized and statements made by the defendant at the time of his arrest. The court concluded that the exclusionary rule was not applicable under the circumstances. It appears from a reading of the case that the court concluded that the statements were not made in violation of the fifth amendment.

■■■ The motion to suppress the statement raises two issues. First, that *Miranda* should apply to a probation revocation proceeding. We believe

that the *In re McMillan* decision excluding such evidence is dispositive of this issue. The defendant was entitled to a hearing on his motion to suppress which alleged violations of *Miranda*. The second aspect of the motion, to suppress the confession on the grounds that it was obtained by mental coercion and material misrepresentations, raises factual issues of significant import that would, if believed, show that these are not mere "technical violations." (*Peterson*, at 856.) The defendant is entitled to a hearing to determine the trustworthiness of the statement.

■■ Finally, the defendant contends he is entitled to credit for time served on probation since the court did not deny such a credit. The State contends that certain remarks of the trial court concerning the possibility of parole indicated the court did not desire the defendant to receive credit for time served on probation. Under the circumstances, we find that the court's silence did not amount to an order that defendant not be credited with time served on probation. Therefore, the defendant should receive credit for the time he spent on probation if the trial court determines that a proper evidentiary basis exists for his probation revocation. *People v. Hull* (1976), 36 Ill. App. 3d 152, 342 N.E.2d 279.

For the reasons stated, the judgment of the circuit court of Cook County revoking the defendant's probation, together with the sentence imposed thereon, is reversed and the cause is remanded to the circuit court of Cook County with directions to proceed in the manner not inconsistent with this opinion.

Reversed and remanded.

McNAMARA and SIMON, JJ., concur.