THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
DIANE BARRY, Defendant-Appellee.

Fifth District   No. 5—89—0347

Opinion filed June 28, 1990.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Clyde L. Kuehn, of Kuehn & Trentman, of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

On December 22, 1987, defendant, Diane R. Barry, was charged by criminal information with the offense of unlawful possession of more than 30 grams of cannabis. The cannabis had been found inside a cosmetic bag, inside a totebag behind the passenger seat of the car defendant was driving. On January 6, 1987, defendant filed a motion to suppress the marijuana on the ground that the car she was driving was illegally detained and her bag illegally searched. For reasons which do not appear in the record, a second motion to suppress was filed January 26, 1988. This motion sets forth specific facts and argues that defendant did not consent to the search of her purse, that she was illegally detained, and that the consent to search the automobile given by its owner and passenger was exceeded by the police. Hearing was held on the motion to suppress on February 9, 1988.

Defendant testified that she resides in Pompano Beach, Florida. On December 22, 1987, defendant was driving through St. Clair County on her way from Florida to Kansas City, Missouri, where she was going to catch a flight to visit her family in San Diego, California. She was accompanied by Michael Raszka, the owner of the new BMW automobile she was driving. She was stopped by a plainclothes State policeman, who approached her car. He asked for defendant's identification, the car registration and Raszka's identification, all of which were given to him. Defendant admitted that she had been exceeding the speed limit when stopped. The officer returned to his car, where he remained for approximately 10 minutes. The officer then returned to defendant and explained that he was waiting for a uniformed trooper to arrive to write out a traffic citation; the nonuniformed officer did not have a citation book. Five or ten minutes later, Trooper Moseley arrived. The two officers conferred, and Moseley approached defendant. Moseley issued defendant a citation and explained the procedure to her. At that point, another trooper arrived on the scene. Moseley returned defendant's identification but told Raszka that the third trooper wanted to speak to him. Raszka was asked to step out of the car. Raszka did so. After three to four minutes, Raszka began taking suitcases out of the trunk of the car. Defendant could see that the luggage was being opened and clothing was being taken out. The luggage

was on the side of the road. This process took approximately 10 minutes.

Raszka returned to the passenger compartment of the car and told defendant that he had signed a consent to search form because the officers wanted to search the luggage. Raszka stated that the officers were not satisfied and wanted to search again, this time with a dog. The luggage had been returned to the trunk. Defendant testified that the luggage had been removed from the trunk twice. The first time the luggage had not been opened; the second time it had been. After waiting in the car for some time for the canine unit to arrive, defendant told Raszka to take the airline tickets to the officers and explain that he and defendant had to leave to catch their flight. Raszka then left the car with the tickets.

Defendant testified that by this time she was feeling intimidated and did not feel free to leave. She had been stopped on the roadside for 30 to 45 minutes. Raszka did not return to the BMW, but sat in a trooper's car. After 10 minutes, a third car arrived containing another trooper and a dog. Moseley then approached defendant and asked her to come back to his car so that the dog would not bite or scratch her. Defendant did so. While in Moseley's car, Moseley began to question her about Raszka, her profession, and other personal matters. Defendant felt obligated to answer his questions.

The dog was allowed to circle the car, but defendant did not notice it react to anything. The dog was returned to his vehicle and the officers conferred. The dog was then brought out again. All the luggage was removed from the trunk, and the dog was allowed to jump into the trunk. The dog was also allowed inside the passenger compartment. Defendant had been there an hour by this time. Defendant got out of the squad car and approached the BMW. Defendant was told not to touch anything in the car while the officers conferred.

The officers returned to the BMW and told defendant that the only way she would be free to go would be if the officers searched the bag in the car and found nothing. The bag in question was defendant's tote bag in which she carried her portfolio, makeup, personal hygiene items and money. The bag also contained cannabis. Defendant stated that she did not want the officers to look through her bag because she had personal items in it. Defendant denied that she gave the officers permission to look in the bag, but stated she felt helpless in the situation. The bag was taken out of the car, and Trooper Martin asked defendant to go to the squad car with him. Defendant's bag was thoroughly searched and the cannabis was discovered. Defendant was then arrested.

On cross-examination, defendant testified that the officers never threatened her and that she told the officers not to look in her bag. While the officers were going through her bag, defendant took the makeup bag which contained the cannabis and exclaimed that there was nothing in it. One of the troopers took the makeup bag from her and looked through it. Defendant never felt like she had any choice in the matter. At one point, defendant heard one of the troopers tell Raszka to shut up or he would make his life miserable.

Captain William R. Barrett testified that he is the State trooper who initially stopped defendant for exceeding the speed limit. Defendant was travelling at speeds well over 85 miles per hour. Barrett estimated her speed at 100 miles per hour at times. Barrett radioed for a uniformed officer to respond to stop the vehicle because Barrett did not have a citation book. When no uniformed officer responded, Barrett stopped defendant himself. Defendant presented a Florida driver's license and her passenger presented a New Jersey driver's license. Barrett returned to his squad car to process the information on the drivers' licenses, and Trooper Moseley arrived. Moseley issued a citation to defendant. Trooper Martin arrived and conferred with Barrett and Moseley about the possibility of obtaining consent to search the vehicle defendant was driving.

A written consent to search was obtained from Raszka, the owner of the car. Raszka began to remove items from the trunk. Martin inquired of Raszka whether he would allow a canine search of the vehicle. Raszka expressed concern about arriving on time for his flight, but ultimately agreed to wait for the canine unit to arrive. Upon arrival of the canine unit, the dog was allowed to sniff the outside of the car. The dog responded or reacted at several locations, indicating he detected some narcotic substance. The dog again so indicated when it was allowed to enter the car. The dog's handler told Martin that the dog indicated that there was a narcotic substance in defendant's bag. Barrett did not see defendant object forcibly to the search of her bag.

State Trooper William Moseley testified that he was involved in the stop and arrest of defendant on December 22, 1987. Moseley issued a traffic citation to defendant. While he was issuing the citation, Trooper Martin arrived. Defendant was released from the traffic stop and her identification and the citation were returned to her. Trooper Martin indicated that he suspected there might be contraband in the car and asked Moseley if he could speak with the car's occupants when Moseley was finished. Trooper Martin asked Raszka if he was carrying any contraband, to which Raszka responded no. Raszka consented to a search of the vehicle and signed a written consent form. Raszka then

began to remove items from the trunk of the car and to open luggage. Martin asked Raszka if he would object to having the canine unit search the vehicle. Raszka was concerned about the time, but consented. The canine unit arrived, the dog searched the vehicle and indicated the presence of narcotics. The dog's handler indicated that the dog had reacted to defendant's bag in the passenger compartment of the car, and Trooper Martin asked defendant if they could search the bag. Moseley recalled that defendant consented to the search of her bag, although he did not recall her exact words. He did recall that defendant gave no negative response at all. Trooper Martin took the bag back to the squad car and he, defendant and Moseley sat inside the car. While the bag was being searched, defendant picked up a makeup case, opened it, showed some of the contents and stated that there was nothing in it but makeup. Defendant then attempted to replace the makeup bag in the purse. Martin took the makeup bag and handed it to Moseley, who found cannabis inside.

Richard Martin testified that he had overheard the radio transmissions of the stop of the car defendant was driving. He proceeded to the scene to "see what was going on." Martin asked Raszka if he had any weapons or contraband in the vehicle. Raszka responded no and got out of the car, opened the trunk and began taking luggage out of it. He told Martin that he could look around if he wanted to. Martin asked Raszka to sign a consent to search form, which he did. The form consents to a search of the vehicle and luggage, including contents thereof. Martin took a quick look through the trunk and asked Raszka if a canine unit could search the car. After expressing some concern about the time and catching his flight, Raszka consented to the canine search.

The dog searched the vehicle and indicated the presence of a narcotic substance in defendant's bag. Martin asked defendant if it was okay to look in her bag. "She kind of shrugged her shoulders, nodded kind of yes. Either said okay or yes or something along those lines. I am not exactly sure what she said. Either okay, yes or yeah, something like that." The bag was retrieved from the car, and Martin, defendant and Moseley went back to a squad car. Defendant removed a cosmetic case from the bag, opened it, began taking items out of it and stated that there was nothing in it. Martin took the case from her and gave it to Moseley, who discovered the cannabis. Defendant never expressed any opposition to the search of the bag.

Trooper Michael T. Donovan testified that he is with the canine unit of the State Police. In that regard, he underwent initial training for 14 weeks, and has continuing training for one day each week. He

has worked with Judd, the dog in question, for 4½ years. Judd went through the initial 14-week training and an additional 18-week training, and also has training one day each week. Both Donovan and Judd are recertified every six months.

Donovan was requested to respond to defendant's location by Trooper Martin on December 22, 1987. The dog was allowed to circle the vehicle and alerted to the two doors and left tail light. When the dog alerts, it indicates that he detects the odor of narcotics. The dog alerts by pawing at the location on the vehicle. The dog was then placed inside the vehicle. The dog alerted on a bag behind the driver's seat of the car. Donovan advised the other troopers of the results of the dog's search, and put the dog away. The bag was taken out of the car and handed to defendant. Defendant was asked if they could look in the bag and responded yes. The bag was removed from the car by Trooper Martin.

The owner of the car, Michael Raszka, was called in rebuttal. He testified that he resides in New Jersey and that he has known the defendant for approximately one year. He and defendant were traveling to Kansas City, Missouri, on December 22, 1987, in his new BMW in order to catch a flight to San Diego, California, to visit defendant's family. They were stopped on the highway by a nonuniformed police officer, who asked for their drivers' licenses and the vehicle registration. The officer returned to his vehicle, and Raszka and defendant waited approximately 10 to 15 minutes until Trooper Moseley arrived. Moseley issued a traffic citation to defendant for exceeding the speed limit. This took another 10 to 15 minutes. Moseley returned the drivers' licenses and car registration. Defendant began to converse with Moseley about the procedure for handling the citation. Moseley then instructed Raszka to exit his car and go to the rear of the vehicle because another trooper wanted to talk to him. Raszka complied. Trooper Martin asked Raszka to sign a consent to search form. Raszka responded that it wasn't necessary and proceeded to open the trunk of the car and show the trooper its contents. Martin insisted that Raszka sign the form, which Raszka did. The officers then unloaded all the bags out of the trunk. They opened the bags and briefly looked through them. The bags were returned to the trunk and the officers conferred. The officers returned, removed the bags from the trunk and carefully inspected the inside of the trunk. The bags were again replaced in the trunk, the trunk was closed and Raszka was informed that a canine unit had been summoned. Raszka was ordered to remain in his vehicle until the canine unit arrived. After waiting approximately 10 minutes, Raszka took the airline tickets back to Martin's

squad car. Raszka told Martin that he wanted to leave to go to Kansas City. Raszka was ordered to remain in Martin's car. Martin radioed headquarters to get an estimated time of arrival on the canine unit. Raszka was told to remain in Martin's car another 10 to 15 minutes until the canine unit arrived. Martin then began to question Raszka about personal matters. Martin told Raszka that if he would admit to just having a joint, Martin would let him go.

The canine unit finally arrived, and defendant exited the car and sat in Moseley's car. The luggage was removed from the trunk and the dog sniffed the luggage. The dog then circled the car. The bags were returned to the trunk, the dog was put away and the officers conferred. The bags were again removed from the trunk and the dog was allowed to jump into the trunk. Raszka told Martin that he didn't want the dog inside the car. Raszka got out of Martin's car and approached Trooper Donovan. Raszka told Donovan that he didn't want the dog in his car. Donovan placed his hand on Raszka's chest and told him not to cause a scene or Donovan would make his life miserable. The dog was then allowed to enter the passenger compartment of the car. The officers then conferred again. Raszka was told that he would be allowed to leave only after defendant's bag, which was in the back seat, was searched. Martin took the bag from the vehicle. Defendant objected, but Raszka told her to let them search as they would not let them go until they had done so. Defendant did not respond. She was escorted back to the squad car. On surrebuttal, Trooper Donovan denied placing his hand on Raszka's chest or threatening him in any way.

The consent to search form was admitted into evidence. It reads,

"I. Michael D. Raszka, hereby grant my consent to Tpr. R.A. Martin No. 3865 and Tpr. Wm. Moseley No. 3238, officers of the Department of State Police, State of Illinois, to search the following: Vehicle, ***; including luggage and contents thereof ***."

After hearing argument, the court held that there was no probable cause to search Raszka's vehicle and no exigent circumstances to justify a warrantless search. However, the court found that Raszka initially voluntarily consented to the search, but that that consent was restricted to Troopers Martin and Moseley and to the area of the trunk, the luggage contained therein and the contents of the luggage, and that in any event, it did not extend to the search of defendant's cosmetic bag. The court found that there were a series of searches, rather than one single search. The court further found that defendant did not consent to the search of her bag, but merely submitted to perceived police authority. Furthermore, any consent which may have

been given by defendant was withdrawn or revoked with respect to the cosmetic bag which contained the cannabis.

The People of the State of Illinois appealed this order to this court, which found that the trial court had applied the wrong burden of proof (proof by clear and convincing evidence rather than by a preponderance of the evidence). The order was reversed and the cause was remanded to the trial court with directions to review the evidence in light of the proper burden of proof.

After reviewing the evidence presented in the hearing and hearing additional argument of counsel, the court again granted defendant's motion to suppress, incorporating by reference the original order, and also finding that the canine search did not establish probable cause to search defendant's bag, and that Raszka did not voluntarily consent to the canine search.

The State appeals, arguing that Raszka consented to the search of his car, did not withdraw or revoke that consent, and that the scope of the consent included the canine search. The State argues the trial court's finding to the contrary is against the manifest weight of the evidence. The State further argues that once the dog alerted on defendant's bag, probable cause to search that bag was established regardless of defendant's consent or lack of consent, and that no warrant was required due to exigent circumstances. The State also argues that defendant does not have standing to object to the search of the car.

Defendant argues, on the other hand, that, although Raszka's consent to the initial search was voluntary, the canine search was a separate and independent search to which Raszka did not consent. The defendant argues the trial court's finding that there were multiple searches and that Raszka did not consent to the canine search is not against the manifest weight of the evidence. Finally, defendant argues that she did not consent to the search of her bag. Defendant also argues that, by failing to raise the issue before the trial court, the State has waived the argument that she lacks standing to challenge the search of Raszka's car.

■■ We will address the matter of standing first. Issues, including that of standing, not raised in the trial court are generally considered waived on appeal, and this principle applies to the State as well as to the defendant in a criminal case. (*People v. Holloway* (1981), 86 Ill. 2d 78, 91, 426 N.E.2d 871, 877.) In the instant case, the State did not object in the trial court to defendant's challenge to the search of Raszka's vehicle, nor did the State argue at either of the hearings before the trial court that defendant lacked standing to challenge the

search of Raszka's vehicle. Had the State done so, defendant may have been able to establish that she did have standing to so object to the search of Raszka's vehicle. Consequently, we find that the State has waived its right to challenge the standing of defendant to object to the search of Raszka's vehicle.

We now turn to the search of Raszka's vehicle. Defendant concedes that the initial stop of the vehicle was reasonable and that the initial search of the vehicle was consensual. However, the trial court found, and defendant now argues, that the canine search was a separate and independent search to which Raszka did not consent and for which probable cause did not exist.

■■ ■ A trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous, and it is the function of the trial court to determine the credibility of the witnesses, the weight to be given their testimony and the inferences to be drawn from the evidence. (*People v. Galvin* (1989), 127 Ill. 2d 153, 162-63, 535 N.E.2d 837, 841.) Further, the issue of whether a valid consent has been given is a factual matter to be determined by the trial court. *People v. Cole* (1977), 53 Ill. App. 3d 711, 713, 368 N.E.2d 1308, 1310.

■■ The trial court found that Raszka did not voluntarily consent to the canine search. This finding is supported by the evidence. Raszka testified that he was ordered to remain in his vehicle until the canine unit arrived, that when he told Martin that he wanted to leave to go to Kansas City, Martin ordered him to remain in Martin's vehicle and that he was told to remain in Martin's vehicle until the canine unit arrived. Furthermore, when the canine unit arrived, Raszka told Martin that he did not want the dog in his car. Raszka also told Donovan that he did not want the dog in his car; Donovan threatened Raszka. While some of Raszka's testimony was contradicted by the officers, the determination as to credibility of witness is primarily a function of the trial court. (*Galvin*, 127 Ill. 2d at 163, 535 N.E.2d at 841.) We cannot say that the trial court's finding that Raszka did not voluntarily consent to the canine search of his vehicle is against the manifest weight of the evidence, and we therefore affirm the judgment of the circuit court granting defendant's motion to suppress evidence.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

HARRISON and CHAPMAN, JJ., concur.