THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JEFFREY A. STEWART, Defendant-Appellee.

Fifth District    Nos. 5—91—0101, 5—91—0102 cons.

Opinion filed March 18, 1993.

Paul H. Hillis, Jr., State's Attorney, of Salem, and Douglas B. McKechan, of Trenton (Norbert J. Goetten, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE RARICK delivered the opinion of the court:

The People of the State of Illinois appeal (134 Ill. 2d R. 604(a)(1)) from an order of the circuit court of Marion County, entered January 30, 1991, in Nos. 90—CF—80 and 90—CF—137 suppressing evidence consisting of illegal drugs and inculpatory statements. We affirm the suppression order in No. 90—CF—137 and reverse the suppression order in No. 90—CF—80 and remand for further proceedings.

On June 6, 1990, the circuit court of Marion County, in case No. 90—CF—80, sentenced the defendant, Jeffrey A. Stewart, to two years' probation following his plea of guilty to unlawful possession of cannabis and unlawful possession of a controlled substance. A little over a month later, on July 9, 1990, the defendant was charged by information with unlawful possession of a controlled substance (less than 15 grams of lysergic acid diethylamide (LSD)) in violation of section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(b)) in cause No. 90—CF—137. In addition, a petition to revoke probation in cause No. 90—CF—80 was also filed on July 9, 1990, alleging that the defendant violated his probation by knowingly and unlawfully possessing 15 grams of a substance containing LSD.

On August 3, 1990, defendant filed in both the substantive criminal proceeding (No. 90—CF—137) and the probation revocation pro-

ceeding (No. 90—CF—80) a motion to suppress evidence illegally seized, alleging that the stopping of defendant for a traffic violation did not justify a search of his person and his vehicle.

A hearing on defendant's motion to suppress was held on November 29, 1990. The following evidence was adduced. On July 8, 1990, at approximately 7:21 a.m., Trooper Rog Stockwell of the Illinois State Police, while on general traffic patrol, stopped the defendant for speeding on Interstate 57 in Marion County, Illinois. After he approached the vehicle and asked the driver for his license, Trooper Stockwell recognized the driver (Jeffrey Stewart) from a previous traffic stop he had made earlier in the year. At that time (March 1990), he had arrested the defendant for speeding, driving with an expired license and possession of cannabis and LSD. Although defendant was driving the same car on July 8 that he was driving at the time of his previous arrest, Trooper Stockwell testified that he did not recognize it as such since it had different license plates. Requesting defendant's driver's license, Trooper Stockwell noticed that defendant's hands were trembling as he handed it to him. Defendant also avoided eye contact with the trooper. Trooper Stockwell took defendant back to his squad car and proceeded to write the defendant a traffic ticket. He told defendant he was under arrest for traveling 82 miles per hour in a 65-mile-per-hour zone. As he completed his paperwork on the ticket, Trooper Stockwell asked defendant whether he had "straightened up his life." After defendant indicated he had, Trooper Stockwell suggested that because defendant had straightened up his life, he would have no problem with a search of his car. Defendant replied that he did not want the trooper to search his car and added that he was in a hurry to go home to feed a pet. After posting $50 bond with the trooper, defendant asked if he was free to leave. Trooper Stockwell told defendant that "because of [his] actions and [the trooper's] suspicions, he could not leave." By "actions" the trooper was referring to defendant's nervousness: his trembling hands, his failure to make eye contact and the stuttering in his speech. Trooper Stockwell testified that he did not remember defendant telling him he was acting nervous because he was on probation and did not want a speeding ticket.

Trooper Stockwell then called for a backup unit and a canine unit. The canine unit (Trooper Middleton) arrived 15 to 20 minutes following the call, and the dog alerted on the right passenger-side door and the trunk. Trooper Stockwell testified that during this time the defendant was very nervous and was not free to leave the scene. After the canine unit performed a walk around of the defendant's vehi-

cle, Troopers Stockwell and Middleton left the scene to try to obtain a search warrant, which they did the following day. Thereafter Trooper Stockwell performed the search of defendant's vehicle, which had been impounded, and found two boxes with cannabis residue in the glove compartment and a small brown plastic bottle with cannabis seeds in the trunk.

Trooper Ledbetter of the Illinois State Police testified that on July 8, 1990, he was patrolling Marion County on Interstate 57 when he received a backup call for assistance. Upon arriving at the scene, he met Trooper Stockwell, who indicated that he had stopped the defendant and issued him a citation for speeding and that a canine unit had been contacted. Trooper Ledbetter testified that he was at the scene of the stop for approximately 20 minutes before the canine unit arrived. After the canine unit arrived, the dog alerted on the passenger door and the trunk area of defendant's vehicle. Following this, Trooper Ledbetter stayed at the scene with the vehicle and the defendant, waiting for a tow truck to arrive. Trooper Ledbetter stated that the defendant then walked towards his vehicle. The trooper followed him to defendant's car and observed the defendant go inside his vehicle, take a paper sack and stuff it in his back pocket. The officer asked the defendant what he had placed in his pocket, to which the defendant stated, "nothing." The officer then removed the bag and found that it contained about 279 hits of LSD. Defendant was placed under arrest. Upon search of the defendant's front pocket the officer also found a bottle containing a liquid substance, which tested positive for LSD. The evidence was transported to the District 12 headquarters, and the defendant was taken to the Marion County sheriff's department. At the department the trooper interviewed the defendant after giving him his *Miranda* warnings, and the defendant stated that the LSD was already on the paper, as well as in the bottle.

Defendant Jeffrey A. Stewart testified that he was northbound on Interstate 57 approximately one mile north of Salem on July 8, 1990, at 7:30 a.m. when he was stopped for speeding. He stated that Trooper Stockwell wrote him a ticket for speeding. The defendant stated that the trooper asked him whether he had gotten his life straightened out and if he would mind if his car was searched. Defendant answered that he did not want his car searched. He told the trooper that he had been away on a camping trip in southern Illinois and was in a hurry to get home to feed his animals. Thereafter a canine unit was called which took approximately 20 to 25 minutes to arrive. The defendant testified that the dog walked around his vehicle

twice, and it took about 5 to 10 minutes. Trooper Stockwell then left the scene to obtain a search warrant. Defendant testified that he then returned to his car to obtain his driver's license and that Trooper Ledbetter followed him. The officer then searched the defendant, found the alleged contraband and placed defendant under arrest.

Defendant admitted that there was a brown paper bag stuffed in his back pocket. He also stated that to that point no one had attempted to search him. Defendant estimated that 20 minutes elapsed from the time of the stop until the time when the citation for speeding was issued. He testified that he was a little more nervous than usual. Defendant also testified that until the dog was brought to the scene, no one entered or attempted to search his vehicle in any way.

Trooper Jane Middleton of the Illinois State Police testified that she was called to the scene of a traffic stop involving the defendant on July 8, 1990. She testified that the dog walked around the defendant's vehicle once at approximately 7:55 a.m. and that the walk around lasted about two minutes. The dog alerted on the defendant's vehicle. Trooper Middleton testified that the defendant "appeared to be nervous and very slow and methodical and his speech was very slow." She stated that she accompanied Trooper Stockwell to obtain a search warrant for defendant's vehicle, which was done the following day. She further testified that she was present at the time of the search of defendant's vehicle that next day when she found cannabis seeds and cannabis residue.

On January 30, 1991, the trial court entered an order allowing defendant's motion to suppress evidence consisting of illegal drugs, statements by defendant subsequent to his arrest, and items seized in a search of defendant's vehicle pursuant to a warrant obtained after his arrest. The State thereafter filed a notice of appeal on February 15, 1991. On August 9, 1991, this court granted the State's motion to consolidate case No. 5—91—0101 (criminal proceeding) and 5—91—0102 (probation revocation proceeding) under case No. 5—91—0101.

On appeal, the State argues that the trial court erred in granting defendant's motion to suppress evidence in both the underlying criminal offense and the probation revocation proceeding. We turn our attention first to the substantive criminal offense. Specifically, the trial court found in pertinent part:

"1. Subsequent to a routine traffic stop of the def't for speeding, the def't was detained (seized), against his will, to allow a canine search of his vehicle.

2. The seizure was based upon the arresting officer's observation that the def't was nervous and his knowledge that, on a

prior occasion the def't had been found to be in possession of illegal drugs.

3. The officer's observation and knowledge do not constitute probable cause to arrest nor do they amount to a reasonable articulable suspicion that the def't was involved in criminal activity such as to justify an 'investigatory stop,' and said seizure was violative of deft's 4th Amendment rights under the United States Constitution and therefore was unlawful.

* * *

WHEREFORE, IT IS HEREBY ORDERED THAT IN CAUSE 90—CF—80 and 90—CF—137, that:

All evidence seized and obtained as a result of Defendant's unlawful seizure, consisting of alleged illegal drugs, statements by the defendant subsequent to his arrest, and items seized in the search of defendant's vehicle, pursuant [to] a warrant obtained after his arrest is suppressed and shall *not* be admitted as evidence in trial of these matters." (Emphasis in original.)

A trial court's ruling to suppress evidence will be upheld on appeal unless it is manifestly erroneous. (*People v. Janis* (1990), 139 Ill. 2d 300, 565 N.E.2d 633; *People v. Breeding* (1991), 219 Ill. App. 3d 590, 595, 579 N.E.2d 1128, 1131.) We are especially reluctant to disturb the decision of the trial court where it is based upon the evaluation of the credibility of witnesses. *People v. Barry* (1990), 200 Ill. App. 3d 930, 558 N.E.2d 443; *People v. Guerrieri* (1990), 194 Ill. App. 3d 497, 551 N.E.2d 767.

After reviewing the record, we find that the trial court's order suppressing the drugs obtained from the defendant and from his vehicle was not manifestly erroneous. We note at the outset that the initial stop of defendant's vehicle was valid and was not pretextual. A traffic violation provides more than a reasonable basis for stopping a vehicle. (*People v. Guerrieri* (1990), 194 Ill. App. 3d 497, 501, 551 N.E.2d 767, 769; *People v. Manikowski* (1989), 186 Ill. App. 3d 1007, 1010-11, 542 N.E.2d 1148, 1151.) In this case, the fact that Trooper Stockwell clocked the defendant's vehicle at 82 miles per hour in a 65-mile-per-hour zone gave the officer more than a reasonable suspicion to stop the vehicle for a violation of the law, and accordingly, the initial stop of defendant's vehicle was proper.

After stopping defendant's vehicle, Trooper Stockwell issued defendant a citation for speeding. Defendant's arrest occurred at the time Trooper Stockwell advised defendant that a citation would be issued to him for speeding. (*People v. Kinney* (1989), 189 Ill. App. 3d 952, 955, 546 N.E.2d 238, 240.) Additionally, we note that a seizure

took place at the time of the arrest inasmuch as stopping an automobile and detaining the driver constitutes a seizure for purposes of applying the fourth amendment. (*Berkemer v. McCarty* (1984), 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138; *People v. Kunath* (1981), 99 Ill. App. 3d 201, 205, 425 N.E.2d 486, 489.) In *Berkemer*, the Supreme Court analogized the usual traffic stop to a *"Terry* stop" (*Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868) rather than a formal arrest. (*Berkemer*, 468 U.S. at 439, 82 L. Ed. 2d at 334, 104 S. Ct. at 3150.) Under *Terry*, a law enforcement officer may stop and temporarily detain an individual for the purpose of a limited investigation absent probable cause to arrest, provided the officer's decision to stop is based on specific and articulable facts which, when combined with rational inferences drawn from those facts and the officer's experience, reasonably warrant the investigative intrusion. (*Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 111, 485 N.E.2d 513, 517.) While the officer need not have probable cause to arrest a person in order to conduct an "investigatory stop," he must have an "articulable suspicion" that the person has committed or is about to commit a crime. (*Terry*, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884.) Mere hunches and unparticularized suspicions are not enough. (*Terry*, 392 U.S. at 22, 27, 20 L. Ed. 2d at 906, 909, 88 S. Ct. at 1880, 1883.) The investigative detention, however, must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer* (1983), 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325.

Stopping an automobile for a minor traffic violation does not, by itself, justify a search of the detainee's person or vehicle. The officer must reasonably believe he is confronting a situation more serious than a routine traffic violation. Mere suspicion or curiosity is not enough to justify a search. (*People v. Penny* (1989), 188 Ill. App. 3d 499, 502, 544 N.E.2d 1015, 1017; *People v. Reed* (1967), 37 Ill. 2d 91, 227 N.E.2d 69.) Furthermore, an officer's authority to investigate a traffic violation may not become subterfuge to obtain other evidence based on suspicion. *People v. Thomas* (1979), 75 Ill. App. 3d 491, 494, 394 N.E.2d 624, 627; *People v. Lichtenheld* (1976), 44 Ill. App. 3d 647, 649, 358 N.E.2d 694, 696.

■ In the case at bar, Trooper Stockwell stopped the defendant for speeding and subsequently issued him a speeding ticket. The defendant had committed a traffic offense, and the trooper's initial stop was clearly valid. Once the ticket was written, however, the purpose of the stop had ceased and the trooper was required to allow the

defendant to leave. Instead, he expanded the parameters of the initial investigatory stop by asking the defendant about drugs, asking him if he would consent to a search of his vehicle, and finally detaining the defendant against his will until a canine unit arrived, after defendant had refused to give his consent to a search.

The trooper based his detention of the defendant on defendant's nervousness and the fact that he had stopped defendant earlier in the year and found illegal drugs. Like the defendant in the instant case, the defendant's hands in *Penny* were shaking when he handed his driver's license to the officer. (*People v. Penny* (1989), 188 Ill. App. 3d 499, 503, 544 N.E.2d 1015, 1017.) However, as noted in *Penny*, "nervousness is not a characteristic that generally invokes reasonable suspicion, especially when one is stopped by the police for a traffic violation." (188 Ill. App. 3d at 503, 544 N.E.2d at 1017; accord *People v. Breeding* (1991), 219 Ill. App. 3d 590, 601, 579 N.E.2d 1128, 1135-36; *United States v. Rideau* (5th Cir. 1991), 949 F.2d 718.) Putting aside the "nervousness," the only other evidence which Trooper Stockwell possessed which supported his suspicion that defendant possessed illegal drugs was the trooper's prior encounter with the defendant. With respect to that prior stop, the trooper testified that he believed that the defendant was on drugs, thereby providing the basis for the earlier arrest. Here there is no indication in the record that defendant was on drugs which would provoke the trooper's suspicions. As there was no clear evidence other than defendant's nervousness which would turn the trooper's hunch concerning illegal drugs into an articulable suspicion to justify defendant's further detention, Trooper Stockwell was required to allow the defendant to leave after writing the speeding citation. Additionally, it is also clear that defendant was entitled to leave after he refused to give his consent to a search of his automobile.

We find that defendant's continued detention after the speeding ticket was issued and bond was posted was improper, and accordingly, the trial court's order suppressing evidence obtained as a result of the illegal detention was proper and was not manifestly erroneous, and the suppression order in No. 90—CF—137 (the underlying substantive criminal offense) must be affirmed. We now examine the facts in an effort to see if the trial court was correct in its determination that the evidence should also be suppressed in defendant's probation revocation hearing.

In Illinois the courts have focused on the trustworthiness of the evidence as the standard for determining its admissibility in probation revocation hearings. Accordingly, illegally seized evidence which has

been suppressed in proceedings on a substantive criminal offense may be subsequently utilized, if shown to be trustworthy, in probation revocation proceedings. In *People v. Dowery* (1975), 62 Ill. 2d 200, 340 N.E.2d 529, the supreme court held that the exclusionary rule was not applicable to probation revocation proceedings for violations of a defendant's fourth amendment rights against an improper search. While recognizing the fact that this evidence would normally be inadmissible, the *Dowery* court found it was not patently untrustworthy and should be admissible in a probation revocation proceeding because all reliable evidence should be available to the judge so that he can make a proper determination on a defendant's continued fitness for probationary status. In reaching this conclusion, the court in *Dowery* stated, in pertinent part:

"The grant of probation was imposed upon defendant in the present case after the trial court's consideration that he was not likely to commit another offense; that his rehabilitation would be advanced by probation; and, that the public interest would be served by such disposition. [Citation.] It is clear that granting or denying probation to a convicted defendant necessarily requires the balancing of the character and background of the defendant and the interests of society. [Citation.] During a revocation hearing the interests of society must be amply considered. [Citation.] Merely because there may exist a technical deficiency in police conduct, a trial court should not be forced to release a defendant and return him to a probationary status where there is patent evidence of a serious probation violation." 62 Ill. 2d at 206, 340 N.E.2d at 532.

In refusing to suppress the illegally seized evidence in *Dowery*, the supreme court focused on the limited deterrent purposes of the judicially created exclusionary rule in fourth amendment cases. (62 Ill. 2d at 204-07, 340 N.E.2d at 531-33.) However, in *People v. Peterson* (1978), 74 Ill. 2d 478, 384 N.E.2d 348, the supreme court observed that considerations other than deterrence are involved in cases arising under the fifth amendment privilege against self-incrimination. (74 Ill. 2d at 484, 384 N.E.2d at 351.) As a general rule, the *Peterson* court found that "the sanctity of the person is more deeply offended by invasions of his mind than of his home, or even of his pockets" (74 Ill. 2d at 484, 384 N.E.2d at 351) and that there is a "fundamental difference between violations of *Miranda*'s prophylactic rules and violations of the rights those rules were designed to protect" (74 Ill. 2d at 485, 384 N.E.2d at 351). The court stated that the " 'due process' of a probation revocation proceeding [citation] must include forbearance from

the use of coerced testimony and its fruits." (74 Ill. 2d at 485, 384 N.E.2d at 352.) Acknowledging that the conditional liberty of a probationer may be different from that of the ordinary citizen, the *Peterson* court found it "is not so different as to permit an individual to be taken from the sidewalk to the cell block on the basis of information wrung from his lips." (74 Ill. 2d at 485-86, 384 N.E.2d at 352.) Therefore, if a defendant's confession is in fact involuntary, it is not a "mere technical violation" as was the *Miranda* violation in *Dowery*, and the confession is not admissible at a probation revocation proceeding. Preceding *Peterson*, this court in *People v. Bell* (1977), 50 Ill. App. 3d 82, 365 N.E.2d 203, refused to extend the *Dowery* principle to fifth and sixth amendment violations, contending that an involuntary confession, unlike evidence obtained in an illegal search and seizure, is often untrustworthy and should not be admissible at a probation revocation proceeding. 50 Ill. App. 3d at 89-90, 365 N.E.2d at 209.

The general rule is that evidence obtained in technical violation of constitutional rights can be introduced at a probation revocation hearing, if that evidence is shown to be probative and trustworthy. (*People v. Redmond* (1980), 85 Ill. App. 3d 599, 603, 407 N.E.2d 132, 135.) An exception to this rule, which has bearing on the instant case, is in cases of police harassment. After finding that the fourth amendment "exclusionary rule" was not applicable to probation revocation hearings, the supreme court in *Dowery* made reference to the suggestion of the Federal courts that the rule might apply where police harassment of probationers is shown. One of the Federal cases cited by the *Dowery* court was *United States v. Winsett* (9th Cir. 1975), 518 F.2d 51. In a footnote the ninth circuit reasoned:

> "[W]hen the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceedings may be necessary to effectuate Fourth Amendment safeguards." 518 F.2d at 54 n.5.

In *People v. Knight* (1978), 58 Ill. App. 3d 651, 374 N.E.2d 1045, which involved a probation revocation proceeding, the defendant in a

motion to suppress certain evidence (a television set) alleged that it had been obtained as the result of police harassment of the defendant's wife, threats to search defendant's apartment without a warrant, an attempt to coerce defendant's wife to give consent for the search, and the actual search of the apartment without consent which resulted in the seizure of a stolen television set. The appellate court in *Knight* concluded that this was the type of harassment contemplated by *Dowery* and that this harassment, if demonstrated, would be sufficient to justify suppression. The court held that the defendant was entitled to have an evidentiary hearing on his motion and, since no hearing was held, the cause must be remanded to the trial court for such a hearing. 58 Ill. App. 3d at 655-56, 374 N.E.2d at 1049.

Our supreme court did not agree with this conclusion. In *People v. Knight* (1979), 75 Ill. 2d 291, 388 N.E.2d 414, the supreme court stated that it need not decide the question left undecided by *Dowery*—"whether the type of 'police harassment' described in *Winsett* would justify entertaining suppression motions in revocation proceedings—for the facts here do not establish the 'police harassment of probationers' referred to in those cases." (75 Ill. 2d at 299, 388 N.E.2d at 418.) The evidence at the revocation proceedings in *Knight* disclosed that an arresting officer was acquainted with the defendant during the period of his probation, but the court noted:

> "[T]here was no evidence that he [the arresting officer] knew defendant was a probationer. Nor did defendant's motion make any reference to the officer's prior knowledge of him or his status. Without that essential allegation and proof, the sole basis for considering whether police harassment of probationers justifies extension of the exclusionary rule to probation revocation proceedings never arises." (75 Ill. 2d at 299, 388 N.E.2d at 418.)

Accordingly, for a probationer to bring himself within the parameters of the exception to the general inapplicability of the exclusionary rule in revocation proceedings, he must, in a motion to suppress, allege and prove not only the illegality of the search and seizure but also that it was the result of police harassment. (*People v. Watson* (1979), 69 Ill. App. 3d 497, 500, 387 N.E.2d 849, 851.) However, despite harassing behavior by the police, a defendant will be unsuccessful in his attempt to suppress illegally seized evidence in a probation revocation proceeding unless he can allege and prove that the conduct complained of was performed by an officer who knew the defendant was a probationer. *People v. Knight* (1979), 75 Ill. 2d 291, 388 N.E.2d 414.

Turning to the case at bar, the defendant in his motion to suppress stated:

"5. The Exclusionary Rule must be applied to Jeffrey A. Stewart's probation revocation proceedings because there was police harassment involved in the detention and search of Jeffrey A. Stewart."

In referring to the actions of the officer in its order, the trial court stated:

"4. The officer knew or had reason to know that the defendant was on probation at the time the unlawful search and seizure were conducted.

5. Policy and principle dictate that the exclusionary rule should be applicable on these facts to the probation revocation proceedings therein."

Trooper Stockwell testified that when he stopped the defendant for speeding at 82 miles per hour in a 65-mile-per-hour zone, he proceeded just as he would have in any routine traffic stop. He got out of his vehicle, approached defendant's vehicle and asked the defendant for his license. As he approached the defendant's vehicle, he recognized the defendant as a person he had stopped earlier in the year for speeding. Trooper Stockwell did not recognize the defendant's car as being the same one he had stopped on that prior occasion because the license plates were different. At the prior stop defendant was driving on an expired driver's license, and Trooper Stockwell had, pursuant to a search warrant, found cannabis and LSD in the defendant's vehicle. Defendant testified that when the trooper approached him the first thing he said to him was that he believed he knew the defendant. The trooper then asked the defendant if he would rather sit in his own vehicle or sit in the trooper's vehicle. The trooper testified that the defendant chose to accompany him back to his vehicle. While the defendant was in the trooper's vehicle, Trooper Stockwell, in reference to defendant's prior drug use, asked the defendant if he had straightened out his life. Trooper Stockwell also asked if the defendant would allow him to search the defendant's vehicle. The defendant refused the trooper's request. Defendant indicated that he was in a hurry to get home and asked if he could leave. Trooper Stockwell informed the defendant, after he had been ticketed and had posted $50 bond, that he was not free to leave because the defendant's nervous actions had made the trooper suspicious. The trooper observed the defendant's hands trembling, his stuttering and his avoidance of eye contact when the trooper talked to the defendant.

When asked if he knew what had happened as a result of the charges arising from the prior stop, Trooper Stockwell testified that he had been told defendant received three years' probation and a fine. With respect to the present stop, however, Trooper Stockwell testified he did not recall that the defendant was on probation and did not remember that fact until he discussed it with the assistant State's Attorney on the day following the defendant's arrest. Conversely, the defendant testified that while the trooper was writing the speeding ticket, he asked defendant what had happened as a result of the prior case. Defendant stated that he told the trooper that he had received a couple of years of probation and a fine and was required to do some public service. After the trooper ticketed the defendant, he called for a canine unit. According to the defendant, the trooper told him that if the dog did not "hit on the car," indicating a presence of drugs, he would be free to go.

Are the facts in this case sufficient to support the trial court's determination that the illegal drugs seized from defendant's person and vehicle should be suppressed in defendant's probation revocation hearing? As we have previously noted, the exclusionary rule does not operate to make evidence suppressed at trial on an underlying substantive offense inadmissible at a probation revocation hearing (*People v. Dowery* (1975), 62 Ill. 2d 200, 340 N.E.2d 529), except in limited circumstances such as police harassment of a known probationer (*People v. Knight* (1979), 75 Ill. 2d 291, 388 N.E.2d 414). However, neither *Dowery* nor *Knight* addresses the issue of what constitutes police harassment of a probationer so as to require the operation of the exclusionary rule at a probation revocation hearing, and we have not found any Illinois cases which have examined this precise issue.

In the instant case, unlike *Knight*, there is evidence which, when viewed in the light most favorable to the defendant, indicates that Trooper Stockwell was informed at some point after the traffic stop for speeding that the defendant was a probationer. The trial court's finding of fact pertaining to police harassment was that Trooper Stockwell knew or had reason to know that the defendant was on probation. The question becomes whether the officer's mere knowledge that the defendant was on probation should, without more, constitute police harassment. More precisely, we frame the issue as follows: In the presence of an illegal search and seizure, is it sufficient to allege and prove mere knowledge of a probationer's status in order to establish the "police harassment" referred to in *Dowery* and *Knight* which will trigger the protection of the exclusionary rule in a probation revocation hearing? We hold that it is not.

Mere knowledge of defendant's probationary status was the basis of defendant's allegation of police harassment in his suppression motion and the basis for the trial court's finding of police harassment. We believe that Trooper Stockwell's mere knowledge that the defendant was on probation should not, without more, constitute police harassment. Nor do we find that the reasoning in *Winsett* (the genesis of the "police harassment" exception in Illinois) requires such a result. In *Winsett* the ninth circuit was referring to the situation in which knowledge that a defendant is on probation provides the incentive to conduct an illegal search and seizure. (*United States v. Winsett* (9th Cir. 1975), 518 F.2d 51, 54 n.5.) This is not the situation we face in the instant case. Here there is no nexus between Trooper Stockwell's knowledge that defendant was on probation and his actions toward the defendant. The trooper did not stop the defendant because he recognized the defendant's car or knew he was on probation but because defendant was traveling 82 miles per hour in a 65-miles-per-hour zone. The trooper did not detain the defendant after he had issued a speeding ticket because he knew defendant was a probationer but because defendant behaved nervously, refused to make eye contact and was visibly shaking and stuttering, which raised suspicions in Trooper Stockwell that defendant might be carrying drugs in his car. Trooper Stockwell's request to search defendant's car and his call for a canine unit were based upon defendant's behavior, not his knowledge that defendant was on probation. Additionally, Trooper Stockwell had observed the defendant's behavior on a prior occasion when the defendant had been stopped for speeding and had been carrying cannabis and LSD, and he could note the similarities in the defendant's behavior on the two occasions.

Although the facts taken in the light most favorable to the defendant show that after issuing the speeding ticket the trooper knew the defendant was on probation, we find no facts in the record which demonstrate police harassment because of that fact. Regardless of whether the trooper's suspicions were reasonable, the record shows that the trooper's knowledge that the defendant was on probation did not provide an incentive to conduct the search and seizure. Though defendant testified that he had informed the trooper that he was on probation, he did not testify that Trooper Stockwell threatened him or behaved in a coercive manner because of that fact.

Defendant would have us hold that the trooper's mere knowledge of his probationary status, acquired after the trooper had legitimately stopped him for speeding, is the determinative factor which will trigger application of the exclusionary rule in his probation revocation

proceeding under the limited police harassment exception. We recognize that there could be cases in which the police might take advantage of an individual's status as a probationer and use a traffic stop as a pretext to conduct a search for drugs. That is the scenario upon which the oft-quoted language in *Winsett* was based. Such is not the case here. We fail to see why the outcome of this case should hinge on the fortuitous fact that the State trooper who stopped defendant for speeding was the same trooper who had previously stopped defendant for speeding and was thus instrumental in instigating the process which resulted in defendant being placed on probation for drug charges. If another trooper, who was unaware defendant had been placed on probation, engaged in the same activity as Trooper Stockwell in the instant case, under *Dowery* and *Knight* the seized evidence would clearly be admissible in a probation revocation proceeding. Moreover, if Trooper Stockwell knew the defendant had been convicted on prior drug charges but was not aware of the sentence defendant had received (or perhaps thought defendant was still awaiting sentencing), the seized evidence would likewise clearly be admissible. To find that the result changes when (with all other factors being the same) Trooper Stockwell is informed defendant is on probation seems incongruous to us. We are not faced with the situation where Trooper Stockwell, knowing defendant was on probation, spotted his car and followed him, waiting for a minor traffic violation to occur to use as a pretext to stop the defendant and subsequently search his vehicle. This is not a situation where a police officer engages in a warrantless search of a defendant's vehicle. Instead, based on defendant's nervousness a canine unit was called, and after the dog "alerted" on the vehicle a search warrant was obtained. There was no physical coercion or threatening behavior by the trooper. The only "harassing" behavior alleged and shown by the defendant in this case was the trooper's knowledge defendant was on probation.

We find that the trial court's finding of police harassment based on Trooper Stockwell's knowledge alone and its conclusion of law that "[p]olicy and principle dictate that the exclusionary rule should be applicable on these facts to the probation revocation proceedings therein" are both erroneous. We find that based on the facts presented in this case, no police harassment took place. We accordingly reverse the trial court's suppression order in No. 90—CF—80 (the probation revocation proceeding) and remand for further proceedings consistent with this opinion.

In summary, the trial court's order in the criminal case (No. 90—CF—137, appeal No. 5—91—0101) is affirmed, and the trial court's or-

der in the probation revocation case (No. 90—CF—80, appeal No. 5—91—0102) is reversed; both causes are remanded for further proceedings consistent with this opinion.

No. 5—91—0101, Affirmed and remanded.
No. 5—91—0102, Reversed and remanded.

GOLDENHERSH and LEWIS, JJ., concur.