(No. 50766.– )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. JEFFERY F. KNIGHT, Appellee.

*Opinion filed April 3, 1979.*

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay and Melbourne A. Noel, Jr., Assistant Attorneys General, of Chicago, and Lee T. Hettinger, Joan S. Cherry, and Bryan B. Lavine, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

In November 1975, the circuit court of Cook County sentenced the defendant, Jeffery F. Knight, to 5 years' probation following his plea of guilty to burglary and theft. In December 1976, the court, exercising its continuing jurisdiction over defendant, held a probation revocation hearing, found that defendant had violated his probation by committing a burglary in January of that year and sentenced him to 2 to 6 years in the penitentiary. Defendant's earlier motions to suppress an allegedly involuntary statement and evidence improperly seized had been denied on the ground that motions to suppress were inappropriate at a revocation hearing. The appellate court reversed and remanded, holding that defendant should have been granted an evidentiary hearing on his motion to

suppress. (58 Ill. App. 3d 651.) We granted the State leave to appeal.

Defendant's motion to suppress statements alleged that, after his arrest in February 1976, police had interrogated him without giving him the *Miranda* warnings. The motion further alleged that the statements were involuntary because police had obtained them through "psychological and mental coercion" and that police had knowingly "confront[ed] the accused with certain material misrepresentations of fact." His motion to suppress physical evidence consisting of a television set alleged that the evidence was seized as a direct result of defendant's illegally obtained confession and that police obtained the evidence from defendant's home "by harassing his wife and threatening to search his home without a warrant, and attempting to coerce consent to search, and performing the search without consent."

Those motions were denied by the trial judge based upon his belief that "you are not entitled to have motions to suppress anything" at hearings on petitions to revoke probation. When counsel pointed out that allegedly police harassment had accompanied the seizure of the evidence sought to be suppressed, the court indicated that counsel could introduce testimony of harassment during the hearing on the issue of the credibility of the witnesses.

At the revocation hearing Officer Robert Specht testified for the State that while driving home in his own car at 3 a.m. on January 31, 1976, he saw defendant and Jose Ramos, both previously known to him, standing in front of the dry-cleaning establishment which was burglarized. He parked and observed them for 45 minutes, during which time they would hide when a patrol car passed and then re-emerge. Specht left when they walked away from the premises. When Specht next returned to work on February 2, he learned that the cleaners' had been burglarized on the night of January 30-31.

Specht testified he saw defendant and Ramos on February 4 in the lockup on an unrelated charge. He and his partner, Officer Terrence Hart, spoke with Ramos, who confessed to burglarizing the cleaners' with defendant and said they had stored the proceeds, a television set, at defendant's apartment. The two officers then talked with defendant's wife, who was also at the station, and asked her to surrender the television set, telling her that they could obtain a search warrant if she did not consent. Defendant's wife agreed to cooperate and the officers accompanied her to her apartment, where she gave them the television set introduced into evidence. Specht further testified that, after returning to the station house, he gave defendant the *Miranda* warnings and asked him about the burglary. Defendant initially denied culpability, but, when confronted with the television set, he confessed that he had broken the glass door of the cleaners' with a lead pipe and stood guard while Ramos stole the television set, which the men took to defendant's apartment.

The owner of the dry-cleaning establishment identified the television set in question as the one stolen in the burglary.

Naomi Knight, defendant's wife, testified for the defense that on February 4, at the 14th district station house, Officer Specht threatened to arrest her for burglary if she did not surrender the television set and told her that defendant had given police permission to get the set. Officer Hart then grabbed her by the arm and pushed her out the door, ordering her to go with them and give them the set. When Mrs. Knight asked the officers to get a warrant, they said they did not want to go to all that trouble, and they refused to let her speak to defendant before leaving. At her apartment, Hart pushed her inside and told her to get the television. When he entered the apartment she told him to take the set and leave. Mrs. Knight stated that Ramos had brought the television to her

apartment a few days earlier and told her that it was not stolen.

Defendant testified that in the early morning hours of January 31 he and Ramos had stood in front of the cleaners' waiting for a bus, and that they left when the bus arrived. He observed Specht, with whom he was acquainted, sitting in his car. The next day Ramos brought a television set to defendant's apartment and asked permission to leave it there, denying that it was stolen. On February 4 defendant talked to Specht at the station house and Specht told him that he, his wife and Ramos would be charged with burglary; defendant, however, made no statement to Specht implicating himself.

Defendant urges here that the revocation of his probation must be reversed outright because the State did not prove that he was on probation at the time of the January 31 burglary, although that fact was not denied. The State's petition to revoke alleged that defendant had been placed on 5 years' probation on November 6, 1975, by the same judge presiding at the revocation hearing. The judge's comments during sentencing clearly indicate that he remembered placing defendant on probation and telling defendant that he would be sentenced to 3 to 9 years' imprisonment if he violated the conditions of his probation.

It is settled that a trial court may properly take judicial notice of matters of record in its own proceedings. (*People v. Davis* (1976), 65 Ill. 2d 157, 161.) Similarly, in *In re Brown* (1978), 71 Ill. 2d 151, this court held that when a minor defendant testified that he was 15 years old at a hearing on a motion to suppress, the court could properly consider the testimony in a subsequent adjudicatory hearing in the same case, although no evidence of defendant's age was presented at that hearing. (71 Ill. 2d 151, 153.) We believe these holdings are controlling here. In a probation hearing, the trial court is simply exercising

its continuing jurisdiction over the probationer. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—6—4; *People v. Hunt* (1975), 29 Ill. App. 3d 416, 419; *People v. Lampkins* (1975), 28 Ill. App. 3d 254, 256.) This was, in effect, another hearing in the same case before the same judge, and the contention that the judge could not properly notice the fact that he had previously placed defendant on probation is without merit.

In urging reversal of the appellate court holding that defendant was entitled to a hearing on his motions to suppress the alleged confession and the television set, the State argues that the issues raised by defendant's motions, even if resolved in defendant's favor, would not render the statement or the evidence inadmissible; that defendant's motions were in any case insufficient to raise these issues properly; and that any error in refusing to grant a hearing on the motions was harmless in light of the testimony subsequently elicited at the revocation hearing.

The issue of voluntariness of the inculpatory statement which Officer Specht testified defendant gave was one which, if resolved in defendant's favor, would have rendered the statement inadmissible under our recent holding in *People v. Peterson* (1978), 74 Ill. 2d 478. While indicating that *Miranda* violations of a technical nature would not preclude use of a confession in revocation proceedings, *Peterson* held that an involuntary confession by an accused probation violator and its fruits are inadmissible. Defendant's motion here alleged that the statements were involuntary because police obtained them by means of psychological and mental coercion. The statements held inadmissible in *Peterson* had been found involuntary in an earlier, unappealed from trial for the same reason. It is true that at the revocation hearing defendant testified that he had made no incriminating statements to police. A defendant is entitled, however, to a hearing on the voluntary nature of an alleged confession

even though he denies making it. *People v. Gonzales* (1968), 40 Ill. 2d 233, 240; *People v. Norfleet* (1963), 29 Ill. 2d 287, 291.

The appellate court concluded that defendant's motion to suppress the television set raised the issue of police harassment alluded to in *People v. Dowery* (1975), 62 Ill. 2d 200, and that this harassment, if demonstrated, would have rendered the evidence inadmissible. Consequently, held that court, defendant was entitled to a hearing on his motion. In *Dowery,* this court held that the fourth amendment "exclusionary rule" was not applicable to probation revocation proceedings, but in discussing the issue noted the suggestion of several Federal courts that the rule might apply where police harassment of probationers is demonstrated. (62 Ill. 2d 200, 206.) Specifically, the court referred to *United States v. Winsett* (9th Cir. 1975), 518 F.2d 51, and two other Federal cases. In *Winsett* that court reasoned:

"[W]hen the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards." 518 F.2d 51, 54 n.5.

The appellate court in this case concluded that the allegations in defendant's motion regarding police harassment of his wife constituted the kind of "police harass-

ment" alluded to in *Dowery*, and were sufficient, if proved, to justify suppression. With this conclusion we do not agree. We need not here decide the question left undecided by *Dowery*—whether the type of "police harassment" described in *Winsett* would justify entertaining suppression motions in revocation proceedings—for the facts here do not establish the "police harassment of probationers" referred to in those cases. It is true that testimony elicited at the revocation hearing indicated that Officer Specht was acquainted with defendant during the period of his probation, but there was no evidence that he knew defendant was a probationer. Nor did defendant's motion make any reference to the officer's prior knowledge of him or his status. Without that essential allegation and proof, the sole basis for considering whether police harassment of probationers justifies extension of the exclusionary rule to probation revocation proceedings never arises.

Defendant's motion to suppress the television set, however, also alleged that the set had been seized as a direct result of his involuntary confession. If the involuntariness issue had been resolved in defendant's favor, the set might have been inadmissible as the fruit of the involuntary statement under *Peterson* depending on whether the set was seized prior to the statement, as Officer Specht testified, or subsequent thereto. The appellate court concluded that defendant was not entitled to a hearing on this issue because at the subsequent hearing he denied making a confession. This reasoning, however, ignores the holding of *Norfleet* that a defendant is entitled to contest the voluntary nature of an alleged confession even though he denies making it.

The State contends that defendant's motions did not contain allegations sufficient to raise these issues properly, and that the trial court therefore correctly denied defendant a hearing on the motions. The fundamental problem

with the State's position is that the motions were not objected to as insufficient at the hearing where they could have been amended, and therefore, under normal principles of appellate adjudication, the objection will be deemed waived. (*People v. Curry* (1973), 56 Ill. 2d 162, 170.) Furthermore, the trial court's refusal to grant defendant a hearing on the motions was not predicated on their insufficiency. The court expressly ruled that a motion to suppress was not appropriate at a revocation hearing, and it would have been patently useless for defendant to amend or to make an offer of proof.

Finally, we cannot say that the trial court's error in refusing to grant a hearing on the motions was harmless in light of the testimony elicited at the revocation hearing. The State reminds us that the trial court allowed defendant to introduce evidence of harassment on the issue of credibility and suggests that the testimony given by defense witnesses at the revocation hearing "would probably have been the same at a suppression hearing." The State further notes that defendant introduced no testimony substantiating the charge that the alleged statement was involuntary. The difficulty with this argument is that it requires us to assume that all evidence that might have been offered at the suppression hearing was offered at the revocation hearing. While the court indicated that defendant might introduce certain testimony on the issue of credibility, the judge was apparently referring only to testimony bearing on harassment, not to testimony bearing on the voluntary nature of defendant's alleged confession. In *People v. Strader* (1967), 38 Ill. 2d 93, 97, where the trial court had erroneously overruled an objection to the introduction of an allegedly involuntary statement, this court refused to presume that when defendant subsequently took the stand he presented whatever evidence he had that the statement was involuntary. The court reasoned:

"Before the defendant testified, the trial judge had already ruled that the issue of voluntariness could not be considered because it had not been raised by a preliminary motion. Therefore the fact that the defendant did not offer evidence upon that issue when he took the stand can hardly be said to establish that his claim was without merit." (38 Ill. 2d 93, 97.)

We believe that reasoning controls the present situation as well.

Accordingly, we hold that defendant is entitled to a hearing on the voluntary nature of his alleged confession and, if that issue is resolved in his favor, to a hearing on whether the television set was illegally seized as the fruit of that confession. With this modification the judgment of the appellate court is affirmed.

*Affirmed as modified.*