2009 Ark. 275

**Joseph SHERMAN, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 08–523.**

Supreme Court of Arkansas.

May 14, 2009.

Rieves, Rubens & Mayton, by: Kent J. Rubens; and Daniel G. Ritchey, West Memphis, for appellant.

Dustin McDaniel, Attorney General, by: Laura Shue, Assistant Attorney General, for appellee.

JIM HANNAH, Chief Justice.

Appellant Joseph Sherman appeals the revocation of a previous suspended imposition of sentence that was entered upon the denial of his motions to suppress. Sherman asserts that the circuit court erred in allowing evidence in a revocation proceeding that it had suppressed for new criminal charges; that is, he contends that the circuit court erred in failing to apply the exclusionary rule to the revocation proceeding. He also asserts that, pursuant to article 2, section 15 of the Arkansas Constitution, the circuit court erred in denying his motion to suppress audio and video recordings of cocaine deliveries because a state actor obtained the recordings inside his house without a warrant. This case was certified to this court by the court of appeals as a case involving issues of federal constitutional interpretation and significant issues needing clarification or development of the law. Our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(3) and (5). We affirm.

On November 15, 2004, Sherman pled guilty to possession of cocaine with intent to deliver, and the circuit court sentenced him to ten years' imprisonment with imposition of an additional five years' suspended sentence. An amended judgment and commitment order reflecting the conviction and sentence was entered on December 9, 2004.

On June 2, 2006, Blytheville Police Department Investigator Jason Lloyd and Mississippi County Sheriff's Department Sergeant Robert Ephlin presented to the circuit court an affidavit for search warrant for 1044 Moore Street in Blytheville, a residence believed to be occupied by Sherman. In the affidavit, the investigators stated that they had been assigned to work narcotics cases in Mississippi County and the City of Blytheville and that they were aware that Sherman was currently involved in the distribution of cocaine and had been for a number of years. The affidavit stated that the investigators were aware that Sherman had been charged with five drug-related offenses within the past eleven years, had served time in the Arkansas Department of Correction for some of those offenses, and was currently on parole. The affidavit stated that at the time of one of Sherman's prior arrests, which took place at the 1044 residence, Sherman attempted to destroy evidence by flushing it down the toilet, after officers knocked and announced their presence.

The affidavit further stated that on April 27, 2006, Lloyd was involved in a surveillance of Sherman's residence at 1044 Moore when he observed a white female enter the residence and then leave after a few minutes. Lloyd followed the female and stopped her after he observed traffic violations. During the stop, Lloyd recovered a small baggie of suspected powder cocaine. The woman was arrested and charged with possession of a controlled substance.

The affidavit stated that on June 2, 2006, Lloyd was again conducting surveillance of Sherman's residence and observed someone enter the residence and leave a short time later. The person was stopped, and Lloyd recovered a small baggie that contained suspected powder cocaine. The person subsequently told Lloyd that he or she had been inside Sherman's residence and purchased the cocaine for forty dollars.

Based upon the affidavit, the circuit court issued a search warrant on June 2, 2006, which provided that the "knock and announce" rule would not apply. A flash-bang device was used, and during the

search, officers recovered a substance believed to be crack cocaine, as well as drug paraphernalia.

On December 13, 2006, Lloyd presented to the district court an affidavit for search warrant. In this affidavit, Lloyd stated that a confidential informant had made two controlled buys of crack cocaine from Sherman at his residence. The district judge signed the search warrant that same day. Lloyd requested and received an exception to the "knock and announce" rule. Upon execution of the warrant, officers recovered drug paraphernalia, pills they suspected to be Xanax, and what officers believed to be trace amounts of cocaine.

The State filed new criminal charges against Sherman, and on May 1, 2007, the State filed a petition for revocation of suspended imposition of sentence, asserting that Sherman had committed various new drug crimes, including possession of cocaine with intent to deliver and possession of drug paraphernalia on June 2, 2006, delivery of cocaine on December 5, 2006, delivery of cocaine on December 27, 2006, and possession of Xanax and drug paraphernalia on December 31, 2006. Sherman moved to suppress all the evidence from both searches and separately moved to suppress any audio or video recordings obtained by the confidential informant.

The circuit court orally ruled on both motions to suppress, beginning with whether the evidence was admissible for new criminal charges.[1] With respect to the June 2006 search, the circuit court concluded that the use of the flash-bang device was unreasonable. The circuit court further concluded that the affidavit for search warrant did not establish proba-

ble cause for a search. Accordingly, the circuit court granted Sherman's motion to suppress the evidence seized from the June 2006 search, with respect to new criminal charges.

The circuit court then considered the motion-to-suppress evidence seized from the December 2006 search. The circuit court concluded that the affidavit for search warrant did not establish probable cause under either the United States Constitution or the Arkansas Constitution. The circuit court found that the affidavit contained no facts establishing the veracity of the informant and that it was "unusual" that the officer who prepared the search warrant submitted it to the court with the no-knock provision already checked, despite the fact that the affidavit contained no facts that would justify a no-knock search.

The circuit court also concluded that the good-faith exception to the warrant requirement, under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), did not apply. Accordingly, the circuit court suppressed the evidence from the December 2006 search, with respect to new criminal charges.

The circuit court then addressed the issue of whether the suppression of the evidence from the trial of the new charges required suppression at the revocation hearing. The court concluded that there was a different good-faith exception that applied to revocation hearings, one that required that officers exhibit subjective, rather than objective good faith, as is required under *Leon*. The circuit court found that the officer's errors had more to do with bad training than any bad intent. As

1. As noted, *infra*, the circuit court ultimately granted Sherman's motions to suppress evidence for the purpose of new criminal charges. While those rulings are not at issue on appeal, it is necessary to include the circuit court's findings on those motions, as they are necessary to an understanding of Sherman's arguments on appeal.

such, the circuit court concluded that, because the officers acted in subjective good faith, the exclusionary rule did not apply to the revocation hearing. Therefore, the circuit court allowed admission of the evidence at the revocation hearing.

Sherman also challenged the State's use of audio and video recordings made by the confidential informant while in Sherman's residence. Sherman claimed that the two entries by the "secret agent" of the Blytheville Police Department violated his rights under the Fourth Amendment of the United States Constitution and article 2, section 15 of the Arkansas Constitution. The circuit court ruled that the informant was an agent of the police department. However, based on the reasoning in *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), the circuit court concluded that using an informant to enter and record illegal transactions violated neither the Fourth Amendment nor the Arkansas Constitution. Therefore, the circuit court ruled that the tapes could be used as evidence at the revocation hearing.

Based on the evidence seized in the two searches and the evidence derived from the taping of the informant's conversations with Sherman, the circuit court revoked Sherman's suspended imposition of sentence. On August 27, 2007, a judgment and commitment order was entered sentencing Sherman to a term of twenty years in the Arkansas Department of Correction. Sherman now brings this appeal.

### Application of the Exclusionary Rule at Revocation Proceedings

■ Sherman first contends that the circuit court erred in failing to apply the exclusionary rule at the revocation proceeding. Sherman states that the circuit court erroneously concluded that a subjective good-faith exception applies to revocation proceedings, as opposed to the objec-

tive good-faith exception required under *Leon*. The State responds that the circuit court correctly concluded that, in revocation proceedings, Arkansas courts look to the subjective motivations of the officers to determine the exclusionary rule's applicability.

The United States Supreme Court has explained that

[t]he exclusionary rule prohibits introduction into evidence of tangible materials seized during an unlawful search, *Weeks v. United States*, 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed. 652] (1914), and of testimony concerning knowledge acquired during an unlawful search, *Silverman v. United States*, 365 U.S. 505 [81 S.Ct. 679, 5 L.Ed.2d 734] (1961). Beyond that, the exclusionary rule also prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes "so attenuated as to dissipate the taint," *Nardone v. United States*, 308 U.S. 338, 341 [60 S.Ct. 266, 84 L.Ed. 307] (1939). *See Wong Sun v. United States*, 371 U.S. 471, 484–485 [83 S.Ct. 407, 9 L.Ed.2d 441] (1963).

*Murray v. United States*, 487 U.S. 533, 536–37 [108 S.Ct. 2529, 101 L.Ed.2d 472] (1988). This court has also held that "the exclusionary rule commands that where evidence has been obtained in violation of search and seizure protections, the illegally obtained evidence cannot be used at the trial of the defendant." *Griffin v. State*, 347 Ark. 788, 793, 67 S.W.3d 582, 585 (2002).

In *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the United States Supreme Court fashioned a good-faith exception to the requirement of

a valid warrant so that suppression of evidence would not be appropriate when a law enforcement officer acted in good-faith reliance on a facially valid warrant. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), provides the test for determining whether a warrant alleged to have such defects falls outside the *Leon* good-faith exception. Under *Franks,* a warrant should be invalidated if a defendant shows by a preponderance of the evidence that (1) the affidavit contained a false statement which|₈was made knowingly, intentionally, or recklessly by the affiant, and (2) the false statement was necessary to a finding of probable cause. *Id.* at 155–56, 98 S.Ct. 2674. If those findings are made, the false material is excised and the remainder of the affidavit is examined to determine if probable cause exists. *Id.* If the truthful portion of the affidavit makes a sufficient showing of probable cause, the warrant will not be invalidated. *Id.*

■ The exclusionary rule does not apply to every criminal proceeding, and the general rule is that it does not apply to a revocation hearing. *Queen v. State,* 271 Ark. 929, 612 S.W.2d 95 (1981). At a revocation hearing, a court "may permit the introduction of any relevant evidence of the alleged violation, including a letter, affidavit, and other documentary evidence, regardless of its admissibility under the rules governing the admission of evidence in a criminal trial." Ark.Code Ann. § 5–4–310(c)(2) (Repl.2006). We have stated, albeit in dicta, that the exclusionary rule does not apply strictly in a revocation proceeding, so long as the officers conducting the search acted in good faith. *See Dabney v. State,* 278 Ark. 375, 646 S.W.2d 4 (1983) (citing *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Harris v. State,* 270 Ark. 634, 606 S.W.2d 93 (Ark.App.1980), and dicta in

*Schneider v. State,* 269 Ark. 245, 599 S.W.2d 730 (1980)). While the *Dabney* court couched the exception in terms of "good faith," it is clear that exception applies only in cases where there is "bad faith on the part of the police." *Dabney,* 278 Ark. at 376, 646 S.W.2d at 4.

Today, we take the opportunity to hold, as we suggested by way of dicta in *Dabney,* that the exclusionary rule does not apply to revocation hearings unless the defendant |₉demonstrates that the officers conducting the search acted in bad faith. We refer to the exception as a bad-faith exception so that it is not confused with the *Leon* good-faith exception, which has no application in revocation proceedings. Further, we make no distinction between the different types of revocation proceedings and hold that the bad-faith exception applies to all revocation proceedings.

In *Dabney,* the court perceived no bad faith on the part of the police where "it [did] not appear that the officers were primarily seeking revocation." 278 Ark. at 377, 646 S.W.2d at 4. Other examples of bad faith include cases involving harassment by the police, *United States v. Farmer,* 512 F.2d 160 (6th Cir.1975), and official misconduct that shocks the conscience of the court, *People v. Williams,* 186 Colo. 72, 525 P.2d 463 (1974).

■ We now consider whether the bad-faith exception applies in the instant case. The circuit court found that there was no evidence before the court that the officers conducting the search were aware that Sherman was subject to a term of suspended imposition of sentence. Sherman does not challenge that finding. Further, there is no evidence that the officers conducted the search for the purpose of harassment. Nor is there evidence of official misconduct that shocks the conscience of the court. We hold that the circuit court did not err in concluding that the

exclusionary rule was inapplicable at the revocation hearing. Sherman failed to demonstrate that the officers acted in bad faith. The circuit court did not err in denying Sherman's motion to suppress.

### Audio and Video Recordings

■ Sherman next contends that the circuit court erred in denying his motion to suppress the audio and video recordings of cocaine deliveries in his revocation proceeding. He claims that, pursuant to article 2, section 15 of the Arkansas Constitution, the audio and video recordings should have been suppressed because a state actor obtained them inside his residence without a warrant.[2]

The record reflects that a confidential informant purchased cocaine from Sherman inside his home and recorded the delivery transactions on November 3, 2006, December 5, 2006, and December 27, 2006. The December recordings were conditionally admitted, and the DVD was played as evidence to support the violations alleged in the revocation petition; a malfunction in the November recording prevented its admission. The circuit court concluded that, based on the reasoning in *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), using an informant to enter and record illegal transactions violates neither the Fourth Amendment nor the Arkansas Constitution. Specifically, the circuit court found:

> The defense, in the motion to suppress, contends that by these entries, by what I'm going to call a secret agent of the Blytheville Police Department, that violated his rights under the Fourth Amendment to the Constitution, Article Two, Section 15 [of the Arkansas Constitution].

....

Recognizing that the Arkansas Supreme Court has found that Article Two, Section Fifteen of the Arkansas Constitution provides more protection to the home than the Fourth Amendment, I have considered whether this conduct is prohibited by the Arkansas Constitution. I cannot find any convincing reason or authority to suggest that the taping or transmitting of a conversation consented to by a party to the conversation, inside a suspect's home, would violate the Arkansas Constitution, if the agent were legally present in the home. I can't see any substantial difference in taping a conversation and simply reporting it.

....

I believe that our supreme court would follow the reasoning of *Lewis*. Even in view of greater protection our supreme court provides the home.

To rule otherwise would completely immunize illegal transactions occurring within a person's home. Apart from the devastating impact on law enforcement efforts to investigate narcotics transactions, it only makes sense if a person uses their home as a commercial center, the activities conducted therein would be entitled to less protection.

Ultimately, the issue in search and seizure cases is the reasonableness of the conduct involved.

In that context, even if it's deceitful and even if the person is a secret agent of the police and, which is not disclosed to the homeowner, then I find that that is a distinction that the Arkansas Court would make.

In *Lewis*, the Court held that the Fourth Amendment was not violated when

---

**2.** While Sherman argued before the circuit court that the admission of the recordings was violative of both the Fourth Amendment and the Arkansas Constitution, he does not advance the Fourth Amendment argument on appeal.

an undercover officer entered a defendant's home with consent, even though the consent was obtained by deception. The undercover narcotics officer misrepresented his identity to the defendant, stated his willingness to purchase narcotics, and was invited into the defendant's home where an unlawful narcotics transaction was consummated. The Court wrote:

> Without question, the home is accorded the full range of Fourth Amendment protections. *See Amos v. United States,* 255 U.S. 313 [41 S.Ct. 266, 65 L.Ed. 654] (1921); *Harris v. United States,* 331 U.S. 145, 151, n.15 [67 S.Ct. 1098, 91 L.Ed. 1399] (1947). But when, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant. Of course, this does not mean that, whenever entry is obtained by invitation and the locus is characterized as a place of business, an agent is authorized to conduct a general search for incriminating materials[.]

*Lewis,* 385 U.S. at 211, 87 S.Ct. 424.

In the instant case, Sherman invited the confidential informant and willingly allowed her to enter his home. There is nothing in the record to suggest that the informant, acting as an agent for the police, conducted a search for incriminating materials. Sherman invited the informant in for the purpose of conducting illegal business, in this case, purchasing cocaine. While inside the home, the informant made recordings of their transactions. The United States Supreme Court has held that the Fourth Amendment does not prohibit the warrantless use of undercover agents equipped with concealed devices to record conversations with suspects. *See United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971).

The question before this court is whether the admission of the recordings is prohibited under article 2, section 15 of the Arkansas Constitution. While the search-and-seizure language of article 2, section 15 of the Arkansas Constitution is very similar to the words of the Fourth Amendment, our constitution, state statutes, and criminal rules have clearly embraced a heightened privacy protection for citizens in their homes against unreasonable searches and seizures. *State v. Brown,* 356 Ark. 460, 156 S.W.3d 722 (2004). We recognize that we lack authority to extend the protections of the Fourth Amendment beyond the holdings of the United States Supreme Court, but we do have the authority to impose greater restrictions on police activities based upon our own state law. *Id.* In the *Brown* case, this court held that, although the Supreme Court has held that the Fourth Amendment does not require knowledge of the right to refuse consent as a prerequisite to a showing of voluntary consent, the failure of law enforcement officers to advise a defendant that he or she has the right to refuse consent to the search violates his or her rights as guaranteed by article 2, section 15 of the Arkansas Constitution. *Id.* Though it is clear that this court may deviate from federal precedent in providing greater protection against unreasonable searches and seizures, we only do so when such a deviation is justified. Our considerations in deciding whether to deviate from federal precedent were set forth in *State v. Brown:*

> Without question, a slavish following of federal precedent would render this

court's opinions merely a mirror image of federal jurisprudence, which would carry with it a certain abrogation of our duty to interpret our own state constitution and follow our own state law. Yet, we admit to a concern about deviating too much from federal precedent based solely on our state constitution. A proper balance must be struck between the two.

*Id.* at 470, 156 S.W.3d at 729.

The State contends that Sherman has not shown through his reliance on recent Arkansas cases involving warrantless intrusions by coercive law-enforcement officers that this case, involving an invited illegal-business guest, and the "sanctity of the home" as preserved by the Arkansas Constitution, requires suppression of the recordings. This court, relying on *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), affirmed the admission of recordings of illegal transactions where the informant knew that the transactions were being recorded and helped with the documentation, while the defendant consented to none of it. *See Hoback v. State,* 286 Ark. 153, 689 S.W.2d 569 (1985). In *Smithey v. State,* 269 Ark. 538, 602 S.W.2d 676 (1980), this court agreed with the holding in *White* that "[o]ne contemplating illegal activities must realize the risk that his companions may be reporting to the police" and that there is no distinguishing "between probable informers on one hand and probable informers with transmitters on the other." *Id.* at 543–44, 602 S.W.2d at 679 (quoting *White,* 401 U.S. at 752, 91 S.Ct. 1122). This court concluded that Smithey had no constitutional right to protection of taped conversations with informants and that the Arkansas Constitution "require[d] no different result." *Smithey,* 269 Ark. at 544, 602 S.W.2d at 679. We recognize that *Hoback* and *Smithey* were decided prior to the *Brown* decision, and we also note

that these cases did not involve intrusions into the home.

We must determine whether, under the facts of this case, Sherman should be afforded more protection under our constitution than he is allowed under the federal constitution. We answer in the negative. In *State v. Brown,* we held that a home dweller must be advised of his or her right to refuse a request to consent to search in order to validate a consensual search under the Arkansas Constitution. The State points out that the *Brown* case differs from the instant case because in *Brown,* the home dweller thought she had no choice but to allow entry to three drug-task force officers, whereas, in the instant case, there was no coercion. Indeed, Sherman voluntarily consented to the informant's entry into his home so that he could sell her illegal drugs. Further, while the Arkansas Constitution protects a person's right to privacy in his or her home, in the instant case, Sherman's home was not merely his home; rather, he had converted his home into a commercial center where unlawful business was transacted. In such cases, the heightened protection of privacy against unlawful intrusion into a citizen's home that this court adopted in *State v. Brown* does not apply. Sherman invited the informant into his home to conduct the illegal transaction. Even though the transaction took place in his home, it was not reasonable for Sherman to believe that the person to whom he sold cocaine would not share the information with others. Moreover, as the State points out, Sherman has not shown any constitutional significance between the presence of the informant with eyes and ears open, the observations of whom can be written down and testified to in court, and the use of electronic surveillance to efficiently gather the exact same evidence. *See White, supra.* We hold that the circuit

court did not err at the revocation hearing in denying Sherman's motion to suppress the audio and video recordings of cocaine deliveries.

◼ In sum, we hold that the circuit court did not err in denying Sherman's motions to suppress. Under Arkansas Code Annotated section 5–4–309(d) (Repl. 2006), a circuit court may revoke a defendant's suspended imposition of sentence at any time prior to the expiration of the period of suspension if it finds by a preponderance of the evidence that the defendant has inexcusably failed to comply with a condition of his or her suspension. In the revocation proceeding, the State had the burden of proving that Sherman violated the terms of his suspension as alleged in the petition by a preponderance of the evidence, and this court will not reverse that decision unless it is clearly against the preponderance of the evidence. *See, e.g., Davis v. State,* 368 Ark. 351, 246 S.W.3d 433 (2007).

Here, the State presented evidence that Sherman committed various new drug crimes. While Sherman challenged the admission of the evidence, he did not assert that the evidence was insufficient to support a revocation of his suspended imposition of sentence. Indeed, one of the terms of Sherman's suspension was that he "not use, sell, distribute, or possess any controlled substance." The State presented sufficient evidence of violations of his suspended imposition of sentence. The circuit court's decision to revoke was not clearly against the preponderance of the evidence.

Affirmed.