# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,         :
                             :           ID No. 1607007865

v.                         :           In and For Kent County
                             :

KEVIN WALKER,            :
                             :

Defendant.         :

## <u>OPINION</u>

Submitted:  January 5, 2018
Decided:  February 21, 2018

Gregory R. Babowal, Esquire, DEPARTMENT OF JUSTICE, Dover, Delaware, *for the State*.

Stephanie H. Blaisdell, Esquire, OFFICE OF THE PUBLIC DEFENDER, Dover, Delaware, *for the Defendant*.

Clark, J.

Prior to Defendant Kevin Walker's (hereinafter "Mr. Walker's") criminal trial, the Superior Court granted Mr. Walker's motion to suppress evidence seized from an illegal search. That Order applied to his criminal trial. The search at issue was based on an administrative warrant authorized because of Mr. Walker's status as a probationer and initiated by Mr. Walker's probation officer. Mr. Walker now moves the Court to exclude the same evidence from his violation of probation hearing.

The Delaware Supreme Court has not addressed whether the exclusionary rule applies to violation of probation hearings. Furthermore, no Delaware court has issued a written decision regarding its applicability in the context of when a probation officer executes an improperly issued administrative warrant. For the reasons outlined herein, the exclusionary rule does not apply in violation of probation proceedings, even when the illegal search was a result of an administrative warrant issued and executed by probation officials. Accordingly, Mr. Walker's motion to suppress is DENIED.

## I.    Factual and Procedural Background

Mr. Walker began probation on May 10, 2017 as a result of a felony driving under the influence conviction. On June 5, 2017, Delaware probation officers conducted a pre-approved administrative search of Mr. Walker's residence, based upon a tip by a past proven reliable informant that Mr. Walker possessed heroin that

he planned to distribute. The administrative warrant was authorized pursuant to 11 *Del C.* § 4321(d), which permits probation officers to conduct searches of individuals on probation provided the search is authorized "in accordance with Department procedures." The Department of Correction promulgated Probation and Parole Procedure 7.19 that lists requirements for issuing an administrative warrant to search the property of probationers.[1]

As a result of this search, probation officers discovered 252 bags of heroin in Mr. Walker's bedroom along with other drug paraphernalia. The officers also recovered a locked safe and took it to Delaware State Police Troop 3. After forcing the safe open, they discovered a loaded handgun, five doses of a narcotic pain killer, and approximately five grams of marijuana. When law enforcement processed Mr. Walker at Sussex Correctional Institution, they also discovered a log of heroin concealed in his rectum.

After a suppression hearing, a separate judicial officer of this Court held that the probation officers' reliance on a tip involving Mr. Walker did not comply with Probation and Parole Procedure 7.19. Accordingly, the Court granted Mr. Walker's motion to the suppress the seized evidence from his upcoming criminal trial. The Court held that the tip did not substantially comply with that procedure because the

---

[1] *See Culver v. State*, 956 A.2d 5, 10 (Del. 2008) (discussing Procedure 7.19 and its four requirements).

probation officers failed to follow their agency's requirement to corroborate the tip and to investigate the informant's motives. Because substantial compliance with probation procedures is required under *11 Del. C.* § 4321, that Court held that allowing the State to introduce evidence at trial would render regulations promulgated under it meaningless.

Though the suppression order resulted in the dismissal of the underlying criminal action, the State seeks separately to prove that Mr. Walker's criminal conduct violated conditions of his probation. Mr. Walker argues that the finding in the criminal proceeding collaterally applies to his probation revocation hearing because it is based on the same conduct. He accordingly moves this Court to exclude the illegally obtained evidence from consideration at his violation of probation hearing.

For purposes of judicial economy, the Court heard argument regarding the suppression issue, reserved decision, and then conducted a contested violation of probation hearing. At the conclusion of the hearing, Mr. Walker acknowledged that he would appropriately be held in violation if the evidence is not suppressed. The State likewise agreed that without the evidence that is the subject of the motion, it did not meet its burden of proving a violation of probation at the hearing.

## II. Discussion

The Delaware Supreme Court has declined to decide whether the exclusionary rule applies to violation of probation hearings.[2] However, the Superior Court has twice held that the exclusionary rule does not apply to suppress illegally obtained evidence in violation of probation hearings.[3]

In *State v. Kinard*, the Superior Court held as a matter of first written impression, that evidence suppressed from use at trial should not be suppressed from use at a violation of probation hearing.[4] The *Kinard* court based its holding primarily on *Pennsylvania Board of Probation & Parole v. Scott,*[5] where the United States Supreme Court held that the exclusionary rule did not apply in Pennsylvania parole revocation hearings.[6] In *Kinard*, the court applied the balancing test articulated by the United States Supreme Court to our State's probation revocation proceedings.[7] In doing so, it recognized the differences between parole hearings (at issue in *Scott*) and probation revocation hearings. After carefully conducting the required

---

[2] *Jenkins v. State*, 8 A.3d 1147, 1155 n.41 (Del. 2010) (noting that the Delaware Supreme Court has not addressed whether the exclusionary rule should apply to violation of probation hearings); *but cf. Burton v. State*, 781 A.2d 692 (Table), 2001 WL 760842, at *1 (Del. May 24, 2001) (holding, however, that the exclusionary rule is inapplicable in Delaware *parole* proceedings).

[3] *State v. Kinard*, 2005 WL 2373701, at *3 (Del. Super. Sept. 28, 2005); *see also State v. Waters*, 2007 WL 1098120, at *2 (Del. Super. April 11, 2007) (citing *Kinard* without further analysis and holding that "[t]he exclusionary rule does not apply in probation revocation hearings.").

[4] *Kinard*, 2005 WL 2373701, at *3.

[5] 524 U.S. 357, 364 (1998).

[6] *Id.* at 364.

[7] *Kinard*, 2005 WL 2373701, at *2–4.

balancing, it found the exclusionary rule to be inapplicable in Delaware's probation revocation process as well.[8]  Specifically, the *Kinard* court balanced, on one side of the scale, its finding that the exclusionary rule precludes consideration of reliable, probative evidence, which would impose significant costs upon the probation process.[9]  Against those costs, it balanced the benefit of what its deterrent effect would be if enforced in probation revocation hearings.[10]  Of note, the illegal search at issue in *Kinard* involved police conduct where the police had no knowledge of the suspect's probationary status.  In establishing its rule, the *Kinard* court noted that at the time all nine United States Circuit Courts of Appeals and the significant majority of state courts had declined to extend the exclusionary rule to probation violation proceedings.[11]

While establishing an appropriate general rule, *Kinard* analyzes a different situation than the one at hand.  Namely, *Kinard* involved police officers that were unaware of a defendant's probationary status.[12]  After a warrantless search, the

---

[8]  *Id.* at *3.
[9]  *Id.* at *2–3.
[10] *Id.*
[11] *Id.* at *3 (*citing United States v. Armstrong*, 187 F.3d 392, 393 (4th Cir. 1999); *United States v. Finney*, 897 F.2d 1047, 1048 (10th Cir.1990); *United States v. Bazzano*, 712 F.2d 826, 830–34 (3rd Cir. 1983); *United States v. Frederickson*, 581 F.2d 711, 713 (8th Cir. 1978); *United States v. Winsett*, 518 F.2d 51, 53–55 (9th Cir. 1975) *overruled by U.S. v. Herbert*, 201 F.3d 1103 (9th Cir. 2000); *United States v. Farmer*, 512 F.2d 160, 162–63 (6th Cir. 1975); *United States v. Brown*, 488 F.2d 94, 95 (5th Cir. 1973); *United States v. Hill*, 447 F.2d 817, 819 (7th Cir. 1971); *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161, 1163 (2d Cir. 1970)).
[12] *Id.* at *1.

officers discovered drugs on the defendant, which led to a subsequent search of his home.[13] It involved a criminal investigation only. Mr. Walker correctly argues that this case is in part distinguishable from *Kinard* because *Kinard* did not involve an administrative search that was conducted because of the defendant's status as a probationer. Mr. Walker also correctly recognizes that *Scott* created a balancing test, which *Kinard* applied in declining to extend the exclusionary rule to violation of probation hearings.[14] That balancing test weighs the deterrent benefit of suppressing evidence against the costs of hampering the enforcement of probation conditions.[15] Mr. Walker seeks to distinguish *Kinard* by arguing that an illegal probation related search calls for a different weighing of factors than does *Kinard*. Specifically, he argues that the result of a balancing of costs versus benefits in this case favors suppressing the evidence from his violation of probation hearing. In contrast, the State counters that *Kinard*'s general rule should be applied in all violation of probation hearings, under any circumstance.

Prior to the start of the January 5, 2018 probation revocation hearing, the Court heard argument regarding Mr. Walker's motion to suppress the use of this evidence. At argument, the Court observed that some states decline to apply the exclusionary rule at violation of probation hearings as a general rule, but

---

[13] *Id.*

[14] *Id.* at \*3.

[15] *Id.*

7

nevertheless carve out an exception when the evidence was seized as a result of a search directed at a probationer because of his probationary status.[16] As a result, the Court invited the parties to provide written memoranda of law stating their respective arguments regarding whether the evidence in this case should be excluded because the search was directed at a probationer and was based on an administrative warrant authorized because of Mr. Walker's probationary status. The Court acknowledged at the argument that accepting the appropriateness of *Kinard's* general rule would not necessarily be dispositive of the issue in this case. Mr. Walker and the State then timely filed memoranda of law.

As a threshold matter, this Court sees no reason to depart from the holding of *Kinard* that the exclusionary rule does not apply to violation of probation proceedings as a general rule. The *Kinard* Court persuasively and logically applied the balancing test created by the United States Supreme Court in *Scott*, and, consistent with many other courts, found the exclusionary rule to be inapplicable in violation of probation proceedings.[17] The Court must now consider, under these circumstances, whether an exception should be made to the general rule articulated in *Kinard.* Here, the deterrent effect calculus could be different when an improperly

---

[16] *See* Aaron L. Weisman, Annotation, *Admissibility in State Probation Revocation Proceedings of Evidence Obtained Through Illegal Search and Seizure*, 92 A.L.R. 6th 1 §§ 4–5 (2014) (discussing the various approaches to this issue including the jurisdictions that employ an exception to the general rule).

[17] *Kinard*, 2005 WL 2373701, at *3.

conducted administrative search is conducted by the same probation officers that seek to revoke a defendant's probation.

*Kinard* balanced the value of the exclusionary rule's deterrent effect against the cost of withholding reliable information from the truth-seeking process.[18] Mr. Walker argues that, in this context, the need for deterrence weighs more heavily in favor of exclusion because the illegal search was initiated and executed as a probation-related matter. Accordingly, unlike in *Kinard*, the actors sought to be deterred in this case align directly with the actors prosecuting the matter. This argument recognizes that the purpose of the exclusionary rule is not to redress injury, but to deter future unlawful police conduct.[19] The Court finds that applying the rule in violation of probation hearings would have a greater deterrent effect on the agency charged with following proper procedures than that of a separate police agency that is focused instead on the prosecution of criminal offenses. At a minimum, this difference requires an independent weighing of these factors.

The *Scott* decision involved an appeal of the Pennsylvania Supreme Court's decision that itself carved out an exception to the general rule against applying the exclusionary rule in parole proceedings where the officer performing the search knew that the subject was a parolee.[20] The United States Supreme Court declined to

---

[18] *Id.*

[19] *U.S. v. Calandra*, 414 U.S. 338, 347 (U.S. 1974).

[20] *Scott*, 524 U.S. at 367–68.

adopt that exception, finding that sufficient deterrence is still provided in cases where "parole officers may act like police officers and seek to uncover evidence of illegal activity."[21] The Court reasoned that such parole officers are "undoubtedly aware that any unconstitutionally seized evidence . . . could be suppressed in a criminal trial."[22] The majority in that decision also relied on the premise that parole officers' relationships with parolees are "more supervisory than adversarial."[23]

Here, when weighing the separate deterrent effect under this set of circumstances, the result is not a *fait accompli*. First and foremost, the Delaware Supreme Court has not yet directly addressed the issue even as to the general rule.[24] Second, at least the State of Florida, in addressing *Scott*, has distinguished probation from parole and found that the exclusionary rule applies *fully* in probation revocation hearings.[25] Third, notwithstanding the United State Supreme Court's application of the balancing test to Pennsylvania, many States still have applied an exception to this general rule when the officers knew about the defendant's *probationary* status.[26]

---

[21] *Id.* at 369.

[22] *Id.*

[23] *Id.* at 368.

[24] *See Jenkins*, 8 A.3d at 1154 n.41 (summarizing the Superior Court authority and declining to address the issue).

[25] *See State v. Scarlett*, 800 So.2d 220, 221 (Fla. 2001) (holding that the differences between probation and parole hearings are material enough to require application of the exclusionary rule even in light of the *Scott* decision).

[26] *See generally* Weisman, *supra* note 16 at §§ 4–5 (discussing the splits of authority regarding the admissibility, in state probation revocation proceedings, of evidence obtained through illegal searches and seizures).

Those courts also base that exception in part on the theory that the deterrent effect of the exclusionary rule outweighs the cost of excluding reliable evidence when officers are aware of the defendant's probationary status.  Namely, if undeterred, those officers learn that illegally seized evidence can be used to revoke probation.[27]

Consistent with the *Scott* decision's refusal to uphold the Pennsylvania exception requiring knowledge alone, the majority of States creating this exception also require an assessment of the probation or police officer's subjective intent when conducting the search.[28]  This line of cases requires a finding of bad faith, lack of

---

[27] *See, e.g., People v. Knight*, 388 N.E.2d 414, 418 (Ill. 1979) (recognizing "[w]hen the police at the moment of search know that a suspect is a probationer, they may have a significant incentive to carry out an illegal search even though knowing that evidence would be inadmissible in any criminal proceeding. The police have nothing to risk: If the motion to suppress in the criminal proceedings were denied, defendant would stand convicted of a new crime; and if the motion were granted, the defendant would still find himself behind bars due to revocation of probation. Thus, in such circumstances, extension of the exclusionary rule to the probation revocation proceeding may be necessary to effectuate Fourth Amendment safeguards."); *Ex parte Caffie*, 516 So.2d 831, 836 (Ala. 1987) (likewise recognizing "[u]nder certain circumstances, consideration may weigh in favor of the extension of the exclusionary rule to probation revocation proceedings. For example, where illegal acts of the police were directed specifically at a probationer or where they shock the conscience, the deterrent effect that exclusion of such evidence would have outweighs the need of the sentencing court for full and reliable information."); *State v. Davis*, 375 So.2d 69, 74 (La. 1979) (writing that "[k]nowledge that illegally seized evidence can be used in probation revocation proceedings might in some instances provide incentive to law enforcement officers to purposely disregard the constitutional rights of probationers. These possibilities do not warrant general applicability of the exclusionary rule in probation revocation hearings. Still, the court does not and will not condone blatant violations of probationers' constitutional rights. In appropriate cases, where it is demonstrated that an illegal search and seizure was conducted in bad faith and was consciously and purposely directed at a probationer with knowledge of his status as such, the court may and should exercise its discretion to exclude and not consider evidence so obtained.").

[28] *See, e.g., People v. Stewart*, 610 N.E.2d 197, 206 (Ill. App. Ct. 1993) (requiring a nexus between an officer's knowledge of the defendant's probationary status and the illegal action directed toward the probationer before applying the exclusionary rule to revocation probation proceedings); *Davis*, 375 So.2d 69, 74 (La. 1979) (requiring officers to act in bad faith and purposefully directed toward a probationer before applying the exclusionary rule to revocation of probation proceedings); *State v. Proctor*, 559 P.2d 1363, 1364 (Wash. Ct. App. 1977) (declining to extend exception to the

good faith, or conduct that is sufficiently egregious to shock the conscience of the court. On the other side of the split of authority are the many state and federal circuit courts that apply the blanket general rule finding the exclusionary rule inapplicable in probation revocation hearings, without exception.[29]

This case involves a search based on an administrative warrant authorized because of Mr. Walker's probationary status and initiated by a probation officer. It is clear that the officers were aware of Mr. Walker's probationary status, and exclusion as a consequence would provide additional deterrence in the probation venue. However, the Court must balance the cost of impeding the truth-finding process and its detrimental impact on the probation process against the benefit of the rule's deterrent effect. As the United States Supreme Court recognized in *Scott* in the parole setting, litigating suppression issues would transform the process from a "predictive and discretionary effort" to a trial-like proceeding "less attuned" to the

---

exclusionary rule when officers are aware of probationary status but conduct the search in good faith); *Hughes v. Gwinn*, 290 S.E.2d 5, 10 (W. Va. 1982) (requiring knowledge of probationary status and evidence of police harassment); *Holcomb v. State*, 644 So.2d 46, 48 (Ala. Crim. App. 1994) (holding that the exception to the exclusionary rule applies only when illegal acts are directed at probationer because of his status); *People v. Ressin*, 620 P.2d 717, 720–21 (Colo. 1980) (holding that the exception to the exclusionary rule only applies when officers knowingly engaged in a pretextual arrest and exploratory search of the defendant because of his probationary status); *Chase v. State*, 522 A.2d 1348, 1363 (Md. 1987) (holding that the exception to the exclusionary rule does not apply when officers conduct a search in good faith).

[29] *See, e.g., State v. Alfaro,* 623 P.2d 8, 9 (Ariz. 1980) (holding that the exclusionary rule could not be invoked at a violation of probation hearing); *State v. Jacobs*, 641 A.2d 1351, 1354 (Conn. 1994) (holding that the exclusionary rule would not apply to prevent the fruits of a claimed illegal search from being introduced at a probation revocation hearing); *see also Kinard*, 2005 WL 2373701, at *3 n.9 (listing the Federal Court of Appeals decisions that refuse to apply the exclusionary rule in violation of probation hearings).

interests of the parolee and the public.[30]  Although the Court recognizes that probation revocation proceedings are more adversarial than parole proceedings and also involve legally trained judicial officers, for the reasons discussed below,  the Court finds that the exclusionary rule is inapplicable in *any* probation revocation proceeding.

Admittedly, courts that have adopted an exception to the rule based on an officers' knowledge of defendant's probationary status have done so under the theory that knowledge of a suspect's probation status may incentivize officers to act illegally because they will know that illegally seized evidence cannot be used at a probation revocation hearing.[31]  However, the majority of jurisdictions applying this exception have held that mere knowledge of the suspect's probationary status is not sufficient to trigger it.[32]

Most of the cases applying Mr. Walker's advocated exception find suppression of evidence appropriate only upon a showing of bad faith or harassing conduct by the officers involved.  For example, Mr. Walker cites *People v. Knight*.[33]

---

[30]  *Scott*, 524 U.S. at 367.

[31]  *See, e.g., Knight*, 388 N.E.2d at 418 (Ill. 1979) *(quoting Winsett,* 518 F.2d 51, 54 n.5 (9th Cir. 1975).  *Winsett*, however, was subsequently overruled by *U.S. v. Herbert*, 201 F.3d 1103, 1103 (9th Cir. 2000).  In *Herbert,* the Ninth Circuit Court of Appeals relied upon *Scott* and overruled *Winsett* by holding the exclusionary rule inapplicable in Federal probation revocation proceedings.

[32]  *See, e.g., Chase v. Maryland*, 522 A.2d 1348, 1363 (Md. 1987) (applying the "good faith standard" in this context and applying the exclusionary rule in revocation proceedings only upon a showing that the police "did not act in good faith").

[33]  388 N.E.2d 414 (Ill. 1979).

In *Knight*, the Illinois Supreme Court discussed whether evidence seized as a result of *police harassment* of a probationer must be suppressed, and did not hold that *all* illegally seized evidence must be suppressed when the officers knew the defendant was a probationer.[34] Furthermore, *Knight* was decided years before the *Scott* decision and did not apply the then non-existent balancing test. Rather, *Knight* articulated an exception requiring a finding of harassment by an officer of a known probationer as a trigger for applying the exclusionary rule in probation revocation proceedings.[35]

Some jurisdictions find a similar exception only when the officers do not act in good faith. For example, Mr. Walker cites *Dabney v. State,*[36] where the Supreme Court of Arkansas discussed a possible good faith exception in *dicta*. Mr. Walker asserts that this standard would apply when the officers' sole purpose of the search was to revoke probation. However, in *Sherman v. State*, the Supreme Court of Arkansas discussed *Dabney*, and clarified that an exception to the rule applies only when officers act in bad faith.[37] In evaluating whether officers acted in bad faith, the *Sherman* Court considered whether the officers conducted the search in order to

---

[34] *Id.* at 418.
[35] *Id.*
[36] 646 S.W.2d. 4, 5 (Ark. 1983).
[37] 308 S.W.3d 614, 618 (Ark. 2009).

harass a probationer.[38]  Arkansas did not hold that the search of a known probationer is *per se* harassment, even if the search violated the probationer's rights.

In Mr. Walker's case, because the good or bad faith of the officer was irrelevant to the underlying suppression motion, no evidence was adduced one way or the other regarding the officer's motivation.  The State argues correctly that a fair reading of the Court's decision in that matter certainly does not establish any bad faith.  Rather, the violation seems to have been a technical one in nature.  On the other hand, were the Court to apply an exception allowing exclusion in situations involving bad faith, Mr. Walker would be due the chance to address that additional issue through a supplemental hearing.  It would not have been relevant in the companion case's suppression hearing.

To date, this Court is unaware of an instance where the Delaware Supreme Court has recognized a subjective, separate bad faith or harassment benchmark in any Fourth Amendment, Delaware Constitutional, or statutory search and seizure analysis.  The only foray into this venue has been the Superior Court case, *State v. Heath,*[39] which has not been endorsed by other Superior Court decisions or by the Delaware Supreme Court.[40]  Furthermore, the Delaware Supreme Court has rejected

---

[38] *Id.*  In this regard, the Supreme Court of Arkansas referenced searches that shock the conscience of the Court.  *Id.*

[39]  929 A.2d 390 (Del. Super. 2006).

[40] *See Turner v. State*, 25 A.3d 774, 777 (Del. 2011) (observing that *Heath* was not appealed, other Superior Court decisions have not followed *Heath*, and that *Heath'*s reasoning in finding a

the "good faith" exception articulated in *United States v. Leon,*[41] thus declining to permit a good faith exception to the warrant requirement based upon Delaware Constitutional protections.[42] In the face of the Delaware Supreme Court's repeated direction that the linchpin of search and seizure analysis is objective, this Court will not interject a subjective component into the analysis. As the Delaware Supreme Court has held

> [i]n analyzing . . . the reasonableness of a seizure, pat down search, an arrest warrant or search warrant, the reviewing court does not focus on the subjective motivations or intent of the particular person, but instead makes an objective determination of . . . what is required under the law.[43]

Delaware courts' analysis in this regard is consistent with the United States Supreme Court holding in *Whren v. United States.*[44] With *Whren*, the matter is settled as to the Federal Constitution. Furthermore, the Delaware Supreme Court has not extended the analysis beyond the objective benchmark contemplated in *Whren.* Accordingly, notwithstanding Delaware constitutional law, the benchmark for search and seizure analysis in Delaware is also objective in the case at hand. It

---

Delaware Constitutional violation based on the subjective intention of an arrest officer was incorrect).

[41] 468 U.S. 897 (1984).

[42] *Dorsey v. State*, 761 A.2d 807, 814–20 (Del. 2001).

[43] *Culver v. State*, 956 A.2d 5, 19 (Del. 2008); *see also Murphy v. State*, 45 A.3d 670, 674 (Del. 2012) (holding that if objective facts justify a traffic stop, the stop is legal, notwithstanding the officer's harboring a different subjective motivation)

[44] 517 U.S. 806, 813–14 (1996) (holding that constitutional review of the legality of searches and seizures does not depend on the actual motivation of the officer involved).

therefore follows, that when evaluating the applicability of the exclusionary rule to probation hearings, assessing law enforcement's actions for harassment, bad faith, or conduct that shocks the court's conscience is not available under Delaware law.

In the final analysis, even in this context, the burden on the probation system would be too great when weighed against the need for effective deterrence of future probation-focused law enforcement misconduct. Financial costs regarding enforcement, strain on the Court and judicial resources, and impact on both prosecuting and defense attorneys, in an already resource-strained system, would be significant. On the other side of the scale, in this context, the suppression of evidence from the criminal trial also serves a significant, although not as direct, deterrent role. For instance, in this case, the State was forced to dismiss new criminal charges because of the suppression decision in the criminal case. In most such situations, there will be sufficient future deterrence through exclusion of the evidence from new criminal proceedings.

In this Court's view, the orderly process of ensuring that probationers comply with conditions of their probation would be overly disrupted by imposing the exclusionary rule in any way in such proceedings. Since (1) the weight of persuasive authority finding any exception to the general rule qualifies that rule only if those courts find bad faith or harassment, and (2) no subjective evaluation of the officers'

intentions is appropriate under the search and seizure analysis of Delaware law, the general rule properly applies to this case.

### III.    Conclusion

For the reasons set forth above, the officers' knowledge of Mr. Walker's probation status does not justify extending the exclusionary rule to bar the evidence seized from use at his violation of probation hearing.  Under these circumstances, the exclusionary rule is inapplicable to revocations of probation proceedings. Accordingly, Mr. Walker's motion to suppress evidence is **DENIED**.